[Civ. No. 52469. Second Dist., Div. Five. Aug. 29, 1978.]

In re the Marriage of MARY and FREDERICK R. HERRMANN.
MARY HERRMANN, Respondent, v.
FREDERICK R. HERRMANN, Appellant.

362

**COUNSEL**

William A. Pachal for Appellant.

H. Andrew Wasmund for Respondent.

OPINION

**HASTINGS, J.**—An interlocutory judgment of dissolution of marriage between Frederick R. Herrmann (Frederick) and Mary Herrmann (Mary) was entered on January 6, 1977. This judgment awarded to Mary the care, custody and control of Michael Bruce Herrmann (Michael), age five, and ordered Frederick to pay Mary as child support $200 per month, and spousal support in the sum of $300 per month for one year, then $150 per month for the next two years, and $1 for one year thereafter, at the end of which spousal support shall terminate. This judgment also distributed in kind certain items of the community property to Frederick and other items to Mary. The judgment then referred to community real property located at 2812 Elm Avenue, Manhattan Beach, California, and stated: "The court retained [*sic*] jurisdiction of the property until January 26, 1977, at the hour of 1:30 p.m. in Department Southwest 'D' to determine its final disposition."

The hearing concerning the community real property was subsequently held on February 3, 1977. The court found that the fair market value of the property was $77,500, and the first trust deed encumbrance against the property was $29,984. It awarded the property to Mary, and to complete the equal division of the community property, it ordered Mary to deliver to Frederick a promissory note of $23,758. The promissory note was to bear simple interest at 7 percent per annum, and was to become due and payable upon the sale of the residence. The court also retained jurisdiction to effectuate the following: "The house is ordered sold when the earliest of the following contingencies occurs: one; upon completion of the school semester after the child reaches the age of 15; two; upon remarriage of the petitioner; three; upon the death of petitioner and/or the minor child; four; in the event the petitioner commences to live with a member of the opposite sex not related to her; five; upon the agreement of the parties; six; in the event that the petitioner and child move away from said residence for a period and remain away for a period longer than 60 days. [¶] In the event the sale of the house occurs at conclusion of the semester after the minor child becomes 12 years of age, a computation shall be made of the net proceeds of the sale, and said proceeds shall be divided equally after a deduction by the amounts contributed toward the principal by the petitioner. At that time the respondent shall have the election of receiving the proceeds described or the proceeds of the promissory note, but not both. [¶] In the event the house is sold prior to completion of the semester after the minor child becomes 12 years of age,

the respondent shall receive his share of the proceeds pursuant to the terms of the note."

The court made the following statement to counsel from the bench: "Well, I have probably succeeded in making an order which is going to be not agreed with by either side. But bear in mind, gentlemen, all of the Court's discussions in this regard have been that the Court wants to consider the interests and welfare of the minor child of this marriage. Mr. Herrmann is a man who, I believe, also wants to consider the interests and welfare of his minor child and wants to make certain that he has proper housing. . . . [¶] The payments that one would have to make, with the minor child, to obtain housing that would be equivalent to housing in the area where the parties now live, I believe, is beyond the means of the petitioner. And, therefore, from an economic standpoint, it is to the best interests of the child, and indirectly the petitioner and the respondent, to allow the child to continue to live for a period of time where he is."

## Issues On Appeal

Frederick raises two issues on appeal which are:

1. It was the duty of the trial court to make an even distribution of the community property, and it was improper to award the real property to Mary disguised as a form of child support.

2. The promissory note from Mary to Frederick to equalize the distribution of the real property does not comply with the rule in *In re Marriage of Tammen,* 63 Cal.App.3d 927 [134 Cal.Rptr. 161] in that its true value is approximately 40 per cent to 50 per cent less than its face value.

## Discussion

The first issue has been decided in Mary's favor in *In re Marriage of Boseman,* 31 Cal.App.3d 372 [107 Cal.Rptr. 232]. In *Boseman,* three minor children were placed in the custody of the mother. The principal community property asset was the family residence. The trial court divided this asset by giving each party an undivided one-half interest in the residence as tenants in common. It then stated (page 374): " 'As additional support for the minor children said real property is to be in the exclusive possession and control of petitioner [Vera] for the use and benefit of said minors, until the youngest child reaches the age of

majority or until such child is married or otherwise emancipated. Thereafter, the property is to be sold by the parties as soon as possible and the proceeds divided . . . .' " In commenting on the trial court's action, this court (Div. 4) stated on pages 375-376: "The trial court did not regard *immediate* equal division of the community imperative as a correct application of the statutory law; we agree that the Legislature did not intend that upon dissolution the family residence must always be sold and the proceeds divided to meet the mandate of Civil Code section 4800, when it is the only community asset. The Assembly report [Report, Assembly Committee of Judiciary, 1 Assem. J. (1970 Reg. Sess.) pp. 786-788)] goes on to state: 'Where a home with some equity value and its furnishings constitutes the main property subject to division, where there are minor children and where neither party has substantial separate property, the court, in accordance with Section 4800(1) could make a conditional award of the residence to the wife if she is awarded custody of the children. There is little question that economic circumstances would warrant the application of the first exception to the equal division requirement, and it was so intended. The conditions the court might impose are many and varied. . . . The point is that economic circumstances are involved and the *court was intended to have the power to innovate* in making conditional awards of property. That is an important power which gives the opportunity for just application of the law under the circumstances, and it should not be overlooked.' [Italics added.] (1 Assem. J., cited *supra.*)"

The court did disagree with the trial court's division of the proceeds from the sale of the property when it was eventually sold. It stated that the order of the trial court did not take into consideration various contingencies that could occur from the date of its order to the time that the property was sold, for example, the property could increase or decrease in value; also, there should be a method of equalizing the loss to the husband of present income from his share of the property, as well as other considerations such as repairs, total or partial destruction of the premises, etc. In substance, the appellate court's approach to this problem was to order the court to modify the judgment so that the property would be sold by the parties as soon as possible after the youngest child reached majority, then the court would divide the proceeds after a hearing that would consider all of the equities between the parties.

 The trial court in our present case had the right under *Boseman* to permit Mary and Michael to reside in the home for the reasons stated in the court's order. We believe, however, as this opinion will subsequently

show, that some modification must be made to the procedure adopted by the court.

■ 2. Frederick's second argument raises a *Tammen* issue (*In re Marriage of Tammen, supra,* 63 Cal.App.3d 927), to wit, is the promissory note worth the amount required to offset the added community property received? In this case the obvious answer is no. It contains simple interest at 7 percent and is not due and payable until the property is sold, which, in the normal course of events, would be eight years in the future. But more important, it is also subject to numerous other conditions most of which are tied to the court's concern that Michael have the benefit of living in the home for a limited period of time. Frederick offered evidence to show that the note, if offered for sale, would likely be discounted by 40 to 50 percent. In view of the note's many conditions, this seems reasonable. Increasing the note by approximately $12,000 is not, however, the right solution to the problem. Frederick would more than likely try to sell the note under these conditions because there would be no loss to him. The added cost to Mary is substantial and would have to be paid to a bona fide purchaser of the note if the property was sold early because of the happening of one of the contingencies. And complicating it further is the fact that the holder is given an option, under certain conditions, to receive one-half the proceeds from the sale of the house or the value of the promissory note. It is quite possible that the end result would be an unequal division of the community property.

The trial court here, and the court in *Boseman,* both sought the same result, namely, a good home environment for the minor for a reasonable period of time and eventual equal division of the proceeds from the sale of the home when it is sold. The trial court in our present case wisely retained jurisdiction in order to resolve any problems or inequities that might occur. For the reasons stated, however, we believe use of a promissory note to equalize division of the community residential property is generally unfeasible in like situations. *Boseman* recognized this and established a pragmatic formula for dividing the community property equally, as required, while retaining jurisdiction to insure equitable division of the proceeds from sale of the community property at a future time. Frederick also foresaw the problems of using a promissory note to equalize the community property and urged the court to use the *Boseman* approach if the court permitted Mary and Michael to remain in the home.[1] The property in question here should be placed in tenancy in

---

[1]Frederick's counsel represented to the court: "[t]he second alternative is, as I understand it, to remain through junior high school, that *they would remain, as it were,*

common with Frederick and Mary each having an undivided one-half interest. The contingencies determining its sale and division of the proceeds should be spelled out as previously done; however, the court, in conformance with *Boseman,* should also consider its other options, such as equalizing the loss to Frederick of present income, etc., so that final distribution is ordered after consideration of all the equities.[2]

Before concluding this opinion, we believe a caveat is in order. The economic circumstances of the parties here warranted the court's order which, for the sake of the minor child, delayed the sale of the residence. We can visualize a situation, however, where economic circumstances could preclude a delay in the cash distribution of a principal asset and such an order, even if it benefits a minor, could be an abuse of discretion. For this reason, the trial courts must have wide latitude in which to exercise their discretion. It is possible, even probable, that other approaches are available to the courts in other situations similar to the case at bar. Our solution, which is concurred in by Frederick, appears best for carrying out the appropriate intent of the trial court.

The judgment is reversed and remanded for further proceedings consistent with this opinion. Both parties shall assume their own costs of this appeal.

Kaus, P. J., and Ashby, J., concurred.

---

*partners in the house*; they would share in the net equity at the end of the period. . . . My client has informed me that he would accept this as a division, . . ." (Italics added.)

[2]Although the property will be held in tenancy in common, the separate interests are not typical common tenancy interests due to the absence of the ordinary incidents pertaining thereto, i.e., the mutual right to possession by the tenants and the shared responsibility for taxes. (*In re Marriage of Boseman, supra,* 31 Cal.App.3d 372, 376.) We realize that such ownership can produce problems not contemplated by the court or the parties. The court's retention of jurisdiction will enable it to resolve these problems if the need arises. For example, Mary, through whatever means she may have, including refinancing, might be in a position to buy out Frederick's interest in the home. The judgment in this case should not preclude such a possibility.