[Civ. No. 18262. Fourth Dist., Div. One. Jan. 17, 1980.]

In re the Marriage of KATHLEEN and JOE WILBUR DUKE.
KATHLEEN DUKE, Appellant, v.
JOE WILBUR DUKE, Respondent.

COUNSEL

Donna Van Donders for Appellant.

Pierik & Pierik and James P. Pierik for Respondent.

OPINION

**WORK, J.,**\*—Kathleen Duke (Kathleen) appeals from portions of an interlocutory judgment of dissolution of her marriage to Joe Wilbur Duke (Joe). She quarrels with the amount of spousal support awarded; the failure of the court to order Joe to make the children beneficiaries of a private life insurance policy; the apportionment of attorney's fees; certain factual findings by the court; and failure to defer the sale of the family home and allow her as custodial parent to remain there during the minority of the children.

We hold the trial court failed to exercise proper discretion when it rejected Kathleen's request to defer the sale of the family residence in not balancing the significant emotional, economic and social impacts to the family unit of an immediate sale against foreseeable detriment to the noncustodial spouse. We reverse and remand for further consideration by the trial court on this issue alone in accordance with guidelines in the body of this opinion.

*Factual background.*

Kathleen and Joe were married twenty-three years, had three children and lived in the present family residence more than five years. As of the date of judgment, two children (13 and 16) lived in the home. One child was an adult. Joe was a tenured college instructor, 45 years

---

*Assigned by the Chairperson of the Judicial Council.

of age, with a net income of more than $1,900 monthly. Kathleen was 42 years of age and primarily had involved herself in homemaking. She sold Mary Kay cosmetics out of her home and, at trial, netted approximately $50 monthly. She was then enrolled as a second semester junior college student.

Kathleen was awarded custody of the minor children with whom she has resided since their birth. The admittedly large family residence (five bedrooms) had monthly payments of approximately $200, with an existing balance of $28,071, and a fair market value of $90,000. Property taxes were $1,380 per year. The equity in the residence constitutes approximately 60 percent of the total community value. (We do not consider the unknown value of the Marron Ranch property which was not valued and was divided equally by stipulation.)

Neither party requested award of the residence as a share of the community property. The only potentially offsetting asset was Joe's retirement benefits. This was removed from the court's consideration when the parties stipulated the benefits were to be divided equally in monthly increments received following Joe's future retirement. Thus, a sale at some time is required.

Additional assets were divided equally between the parties including stock, cash, furniture, a small inventory of Mary Kay products, and the limited ranch partnership.

Attorneys' fees for both were to be paid from community property funds.

The court ordered monthly spousal support of $400 for an indefinite period and child support of $200 per month per child.

■ *Where adverse economic, emotional and social impacts on minor children and the custodial parent which would result from an immediate loss of a long established family home are not outweighed by economic detriment to the noncustodial party, the court shall, upon request, reserve jurisdiction and defer sale on appropriate conditions.*

The value of a family home to its occupants cannot be measured solely by its value in the marketplace. The longer the occupancy, the more important these noneconomic factors become and the more traumatic and disruptive a move to a new environment is to children whose roots

have become firmly entwined in the school and social milieu of their neighborhood.

The children's desires to remain in the home were made known to the court.

The trial court's disposition would expose the wife to serious economic factors created by present inflationary impacts on the real estate market with resultant high interest rates, tightening of credit, increased market prices, and shortage of housing at a time when she is still responsible for the shelter of her children.

None of these factors are directly addressed by the trial court in its findings.

The impact of inflation on petitioner's ability to effectively utilize her share of the equity to provide adequate housing is compounded by her present limited earning capacity and her need to complete educational requirements abandoned during the 23-year marriage during which she fulfilled the primary role of homemaker and mother. While the inflationary trend may continue until the youngest child reaches majority (April 9, 1983), it is expected Kathleen will at that time have an enhanced earning capacity and be better able to afford to invest in a home if that is her desire.

On the other hand, it appears from the findings Joe's net monthly income adequately provides for his needs and to pay the spousal and child support ordered. (We assume this has already been reduced by $200 per month when the older child, covered by the order, reached majority.)

While Joe expresses a desire to get his equity out of the residence as soon as possible, he shows no adverse consequence to him by a deferral which outweighs the alleged detrimental impacts on the children reasonably expected to follow an immediate sale of this home. It is clear such a "conditional" award of the family residence may be made in appropriate circumstances. (*In re Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal.Rptr. 232].)

Civil Code section 4800, subdivision (a), allows the court to divide the property at the time of judgment "...or at a later time if it ex-

pressly reserves jurisdiction to make such property division...." Further, the court may divide the property on "such conditions as it deems proper to effect a substantially equal division" so long as economic circumstances warrant. (Civ. Code, § 4800, subd. (b)(1).)

The economics of obtaining equivalent housing for a minor child's welfare is certainly well within the legislative intent expressed by the statute. (*In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361, 367 [148 Cal.Rptr. 550].)

The court in its opinion in *In re Marriage of Brigden* (1978) 80 Cal. App.3d 380 [145 Cal.Rptr. 716], found legislative recognition of the precise problem we now address as one falling within the scope of Civil Code section 4800, subdivision (b)(1). It holds such a situation arises where the "asset satisfies a critical need of one of the spouses and there is no adequate replacement for it." (*Id.*, at p. 392.)

We recognize *Boseman, supra,* and *Herrmann, supra,* are cases in which each court specifically justified its action as related to child support. However, such reservation of jurisdiction need not rest solely on an economic support basis. (*In re Marriage of Shanahan* (1979) 95 Cal.App.3d 295 [157 Cal.Rptr. 30].) In any event, we feel the subjective noneconomic impact on the family unit from being deprived of a home environment to which the children have become accustomed is sufficiently significant to allow the court to enter a conditional order such as requested so long as undue hardship is not imposed on the noncustodial parent.

While the parties squarely presented the trial court with the issue of a conditional disposition of the home, no findings relate directly to it. The court's findings on related points favor this option:

(1) The best interests of the children "require" their care, custody and control be awarded to Kathleen.

(2) Petitioner's income and present earning capacity "require" augmentation by spousal support of $400 per month.

(3) After deductions for spousal and child support, Joe has net income above his fixed monthly expenses of $350 (now presumably $550).

(4) Kathleen is completing her education.

(5) The youngest child is 13 years of age.

It is uncontradicted there were no community obligations, except the home mortgage, to be paid from the sale proceeds.

In the record we find no facts which would compel an immediate cash division of the house equity as a matter of preference. Facially it appears to be justified only because it is a simple, final disposition of the matter and divides the community dollars equally.

We do not detect any exercise of discretion by the trial court taking into account the factors the Legislature, and case precedent, have recognized as supportive of Kathleen's position. In the absence of findings on this issue, we do not presume discretion was exercised. We detect none from our review of the record.

A trial court has a great deal of flexibility in dividing community property to achieve the greatest equity and, indeed, is encouraged to be innovative. (*In re Marriage of Boseman, supra,* 31 Cal.App.3d 372, citing Rep., Assem. Com. of Judiciary, 1 Assem. J. (1970 Reg. Sess.).)

A wife's emotional attachment to a family residence of long-time residence is a cognizable factor in determining disposition of property on dissolution. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 886 [160 Cal.Rptr. 516, 603 P.2d 881].)

We feel similar recognition should be given to the emotional attachments of a custodial parent and children in weighing respective interests to determine the benefits to be attained in delaying the sale of the family home.

Where there are minor children whose custody is to be awarded to a party, the custodial party is not financially able to acquire the family home as his or her property share, and that person desires a conditional order be made allowing him or her exclusive use of the home, the unique relationship of that asset to the family requires an analysis of all relevant factors including those suggested above in light of the length of delay requested.

Anticipated economic detriments indigenous to the delayed sale should be addressed in terms specific to the individual case so as to counterbalance any adverse impact to the party out of possession resulting from loss of present income. (*In re Marriage of Herrmann, supra,* 84 Cal.App.3d 361, 367.) If after applying this process the court finds no adverse impact to the noncustodial parent outweighing the economic and/or subjective impact on the children and custodial parent, it shall grant such relief on terms as may be appropriate to the specific case.

The trial of this matter was two years ago. The positions of the parties are undoubtedly changed as are the value of the family home and the economic factors of the real estate market in general. On remand, the court may properly consider the impact of Proposition 13 and its favorable tax consequences to the present owners, as well as the fact this may not be passed on to a new owner.

Also, we are not unmindful of the sharp rise in mortgage interest rates during the pendency of this appeal. Where evidence convinces a court delay will result in a foreseeable probability of economic fluctuations, these are among the relevant factors upon which to base a decision to grant or deny relief, and to tailor any conditional award.

■ *The court did not abuse its discretion in setting the amount of support.*

In determining the amount of spousal support, the court considered the relevant facts and acted within its discretion. (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 458 [152 Cal.Rptr. 668].)

Kathleen's counsel commendably cited all relevant legal authority and facts to the court. She strenuously argued them, pointing out the court's duty to treat wives fairly, to consider their handicap in the job market because of years of homemaking, the right to share in a husband's present accumulated earning capacity to which her community efforts contributed, her physical handicaps (some vision impairment) and her right to continue to enjoy a reasonable lifestyle. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416 [136 Cal.Rptr. 635]; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295].)

The court's findings recognize all facts relating to these issues.

The award made is not so inappropriate, under the facts of this case, to constitute an abuse of discretion.

Further, we find the court was fully advised on and made relevant findings adequately supporting its rulings in each of the other matters contested on this appeal.

The judgment is affirmed in all respects except insofar as it orders immediate sale of the residence, and as to that provision, is reversed.

The case is remanded for such further proceedings the court deems necessary to enable it to determine whether a conditional award of the family residence is proper after a consideration of relevant factors as suggested in our opinion.

Cologne, Acting P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied February 19, 1980, and the opinion was modified to read as printed above.