[Civ. No. 5531. Fifth Dist. Jan. 18, 1982.]

In re the Marriage of LOUISA and SALVADOR ESCAMILLA.
LOUISA ESCAMILLA, Appellant, v.
SALVADOR ESCAMILLA, Respondent.

Counsel

James Heusdens for Appellant.

Nunez, Valdez, Silva & Orduno and Ramon R. Orduno for Respondent.

Opinion

**FRANSON, Acting P. J.**—Appellant Louisa Escamilla appeals from an interlocutory judgment of marital dissolution, challenging the trial court's division of community assets, the interest rate imposed upon a future payment appellant is to make to respondent, and conditions imposed upon an award of the exclusive possession of the family home to appellant as child support. For the reasons to be explained, we hold two of the conditions of the house possession award are unrelated to child support and must be stricken. We also point out an omission in the order pertaining to the method of calculating the fair market value of the house in the event appellant elects to exercise her option to purchase the house on the happening of one of the specified conditions. We remand for further proceedings.

The facts are:

Appellant and respondent were married in 1970 and separated in late 1978. They had five children, four of whom were minors at the time of trial ranging in age from ten to sixteen years.

The parties owned the following community assets: a family residence; household furnishings; a 1977 Dodge Colt automobile; a 1966 Chevrolet pickup truck; and miscellaneous personal property.

In pretrial papers, appellant estimated the 1977 Dodge had a fair market value of $2,000 and was encumbered to the extent of $2,000. Appellant further estimated the value of the unencumbered 1966 pickup truck at $1,000. Respondent's papers did not estimate the value of the Dodge automobile and did not list the 1966 pickup as an asset, community or otherwise.

In its notice of intended decision, the trial court found the 1977 Dodge had a fair market value of $3,200 and was encumbered to the extent of $1,100. It further found the 1966 pickup had a market value of $300 and was unencumbered. The Dodge and other personal property were awarded to appellant; respondent received the pickup and miscellaneous personal property.

After dividing the community assets and debts, the court calculated a difference of $825 in appellant's favor. The court then ordered appellant to pay respondent $412.50 from the proceeds of the eventual sale of the family residence. Interest was to accrue on that amount at 10 percent per annum until paid.

Due to respondent's financial inability to pay child support, and to effectuate a substantially equal division of community property; the court granted exclusive possession of the family home to appellant. The court stated the award was in part a child support order. However, both parties would hold title to the property as tenants in common, and appellant's possession would terminate upon the happening of any one of eight specified conditions to be fully set forth below. Upon occurrence of any of the conditions, the home would be sold and the parties given their respective share of the proceeds, subject to appellant's right of first refusal to purchase the home and pay respondent his share of the fair market value.

An interlocutory decree filed March 17, 1980, incorporated the foregoing provisions. In a further provision of the decree, the court reserved jurisdiction "to amend the order upon a showing of changed circumstances (since it is part of a child support order) ...."

## DISCUSSION

We quickly dispose of appellant's contention that the trial court made an unequal division of community property in violation of Civil Code

section 4800[1] by improperly valuing the 1977 Dodge and the 1966 Chevrolet pickup truck. Since appellant failed to request findings of fact and the trial transcript is not a part of the record on appeal, we are unable to review the trial court's method of valuing the assets. We can only assume respondent as an owner or spouse of the owner, testified to the fair market value of the vehicles. (Evid. Code, § 813, subd. (a)(2).) This would support the valuation findings.

■ Appellant's contention the 10 percent interest figure attached to the unpaid balance due respondent upon sale of the family residence is invalid because it exceeds the maximum 7 percent interest allowable on judgments in the California Constitution (art. XV, § 1) is answered in *In re Marriage of Stallcup* (1979) 97 Cal.App.3d 294 [158 Cal.Rptr. 679]: "Marital property dispositions are not limited by the judgment interest rate of 7 percent, but are controlled by the dictates of fairness and equity in Civil Code section 4800 .... In these times the 10 percent figure is not an unfair recompense to wife for husband's interim use of the principal sum due." (*Id.*, at p. 302.)

■ We turn now to the conditions imposed by the trial court for termination of the exclusive possession of the family residence awarded to appellant. The order appears to be based on the order set forth in *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [148 Cal.Rptr. 550] (see also Adams & Sevitch (1981) Cal. Family Law Practice (2d ed.) § E. 51, p. E-8). The trial court justified the order in part as an award of child support to appellant because respondent was incapable of providing monetary support. Such an order has been upheld as a valid form of child support where economic circumstances warrant. (See *In re Marriage of Thompson* (1979) 96 Cal.App.3d 621, 625-626 [158 Cal.Rptr. 160]; *In re Marriage of Herrmann, supra*, 84 Cal.App.3d 361, 365-366; *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372, 376 [107 Cal.Rptr. 232].)

Appellant does not challenge the validity of this form of support, but argues the court placed impermissible conditions upon her continued occupancy of the home. The court ordered that appellant's right to exclusive occupancy would terminate and the family home would be sold upon occurrence of any of the following contingencies: (1) the

---

[1]Civil Code section 4800, subdivision (a), provides in part: "... [T]he court shall, either in its interlocutory judgment of dissolution of the marriage ... or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties ... equally."

youngest child reaches majority; (2) appellant dies; (3) six months after appellant remarries; (4) an unrelated adult male uses the home as his personal residence; (5) appellant and the children cease to use the home as their regular residence; (6) the structure is destroyed beyond economically feasible repair; (7) appellant fails to make her share of encumbrance payments and the security holder files notice of default; or (8) the parties otherwise agree. Appellant does not challenge the sixth and eighth contingencies relating to destruction of premises and agreement of the parties. Moreover, appellant concedes the court properly ordered cessation of occupancy—and hence child support—upon the youngest child's reaching majority. (See Civ. Code, § 4700, subd. (b).) Appellant urges, however, the remaining conditions are not supported by statute, case law, or policy.

The court below based its order upon *In re Marriage of Herrmann, supra*, 84 Cal.App.3d 361, in which the court approved a decree granting exclusive occupancy of the family home to the wife subject to conditions similar to those imposed below. (*Id.*, at p. 363.) The trial court in *Herrmann* made this award to equally divide the community property residence, but commented from the bench that the contingent award was additionally based on concern for the child's welfare. (*Id.*, at pp. 363-364 .)

The Court of Appeal approved the conditional award of the possession of the house to the wife, noting first that *In re Marriage of Boseman, supra*, 31 Cal.App.3d 372, authorized awarding temporary exclusive occupancy of the family residence to the custodial parent where circumstances warrant. (*Herrmann, supra*, 84 Cal.App.3d at pp. 364-365.) The court then quoted from the legislative history to Civil Code section 4800, which mandates equal division of community property, as follows: """Where a home with some equity value and its furnishings constitutes the main property subject to division, where there are minor children and where neither party has substantial separate property, the court, in accordance with Section 4800(1) could make a conditional award of the residence to the wife if she is awarded custody of the children. There is little question that economic circumstances would warrant the application of the first exception to the equal division requirement, and it was so intended. The conditions the court might impose are many and varied. . . . The point is that economic circumstances are involved and the *court was intended to have the power to innovate* in making conditional awards of property. That is an important power which gives the opportunity for a just application of the law

under the circumstances, and it should not be overlooked." [Italics added.]'" (*Id.*, at p. 365, quoting Assem. Com. of Judiciary, 1 Assem. J. (1970 Reg. Sess.) pp. 786-788.) The *Herrmann* court concluded "the trial court in our present case had the right under *Boseman* to permit [wife and minor child] to reside in the home for the reasons stated in the court's order." (84 Cal.App.3d at p. 365.) The case was, however, remanded because the trial court had ordered the wife be given the residence outright in return for a promissory note representing her husband's one-half interest, a method which, in the circumstances of the case, effectuated an unequal division of community property. (*Id.*, at pp. 366-367.) A more equitable means of balancing the needs of the child with the mandate for equal division of community property was: "The property in question here should be placed in tenancy in common with [husband and wife] each having an undivided one-half interest. The contingencies determining its sale and division of the proceeds should be spelled out as previously done; however, the court, in conformance with *Boseman*, should also consider its other options, such as equalizing the loss to [husband] of present income, etc., so that final distribution is ordered after consideration of all the equities." (*Id.*, at pp. 366-367.)

*Herrmann* thus recognizes a trial court's broad equitable discretion to balance the needs of the nonpossessory spouse with those of the children of the marriage in shaping a dissolution decree. A court may impose a wide range of contingencies in order to prevent actions that unfairly impact upon the rights of the party not in possession. (See *In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 158-159 [161 Cal.Rptr. 444].) Thus, several of the contingencies challenged by appellant herein may be upheld: those providing for sale of the home and distribution of the proceeds upon death of appellant, discontinued use of the home by appellant and the children, and the service of notice of default by the holder of the trust deed on the property resulting from appellant's failure to pay her share of the encumbrances. These contingencies are essentially pragmatic terms protecting the interests of respondent. Moreover, the first two conditions would likely have no adverse impact whatsoever on the children's interest in remaining in the home: appellant's death or discontinued use of the home as a regular residence undoubtedly would terminate the children's use of the home in any event.

Appellant's failure to pay her share of the encumbrances on the property would undoubtedly require a sale of the house to avoid foreclosure

in the light of respondent's limited income. These conditions were validly imposed and should be upheld.

The remaining two conditions challenged by respondent—that appellant's exclusive occupancy would terminate six months after her remarriage or if an unrelated adult male moved into the residence—present a different question. We fail to perceive what adverse impact these conditions would have upon respondent's rights in the property or upon the children's need to live in the house as a means of support. While the continual presence of a third person in the residence might well have an adverse emotional impact upon a nonpossessory father, any such effect would be far outweighed by the benefits accruing to the children from occupancy of the family home. It would be unduly harsh to penalize the children for the possessory owner's personal relationship with third parties. Moreover, with respect to the remarriage condition, it has been held that the continuing parental duty to support minor children is independent of the marital status of the parents. (See *Davis* v. *Davis* (1968) 68 Cal.2d 290, 291 [66 Cal.Rptr. 14, 437 P.2d 502].)

We recognize that under Civil Code section 5127.5[2] a wife's interest in the community property, including the earnings of her husband in certain circumstances, is liable for the support of her children to whom the duty to support is owed. Therefore if appellant should remarry it may be argued that appellant's community interest in her new husband's earnings which would be available to support her children should precipitate termination of the exclusive occupancy of the house and justify its sale. However, section 5127.5 also provides, "[a] natural father is not relieved of any legal obligation to support his children by the liability for their support imposed by this section and such contribution shall reduce the liability to which the interest of the wife in the commu-

---

[2]Civil Code section 5127.5 reads as follows: "Notwithstanding the provisions of Section 5125 or 5127 granting the husband the management and control of the community property, to the extent necessary to fulfill a duty of a wife to support her children, the wife is entitled to the management and control of her share of the community property.

"The wife's interest in the community property, including the earnings of her husband, is liable for the support of her children to whom the duty to support is owed, provided that for the purposes of this section, prior support liability of her husband plus three hundred dollars ($300) gross monthly income shall first be excluded in determining the wife's interest in the community property earnings of her husband.

"The wife may bring an action in the superior court to enforce such right provided that such action is not brought under influence of fraud or duress by any individual, corporation or governmental agency.

"A natural father is not relieved of any legal obligation to support his children by the liability for their support imposed by this section and such contribution shall reduce the liability to which the interest of the wife in the community property is subject."

nity property is subject." Furthermore, Civil Code section 5127.6 provides in part: "Any contribution for care and support provided by a spouse who is not a natural or adoptive parent of the child shall not be considered a change in circumstances that would affect a court ordered support obligation of a natural or adoptive parent for that child."[3] (Added by Stats. 1979, ch. 1170, § 2, p. 4561.) It thus appears the condition requiring immediate termination of appellant's occupancy in the house upon six months after her remarriage would be contrary to the policy expressed in Civil Code section 5127.6.

Finally, we note another defect in the order of the trial court. Paragraph 8(b) provides that upon the occurrence of any of the eight specified events "(1) the wife shall have the right of first refusal to purchase said house by paying the husband his proportion of the fair market value *as calculated below.*" Unfortunately, the order does not provide a method for calculating the fair market value of the house. On remand, this omission should be remedied by providing a procedure for determination of the market value of the house by appraisal or otherwise, if the value is not mutually agreed to by the parties.

The judgment is reversed. The matter is remanded to the trial court with directions to strike conditions 3 and 4 of the child support order pertaining to the grant of temporary exclusive possession of the family home to appellant; to remedy the defect in the order pertaining to the appellant's right to purchase the respondent's interest in the home at its then fair market value and any other modifications of the support order deemed appropriate by the trial court consistent with this opinion.

Zenovich, J., and Stone (C. V.), J.,* concurred.

---

[3]We express no opinion on the question whether Civil Code section 5127.6 would prohibit the trial court from modifying the support order in the instant case under its reserved jurisdiction "to amend the order upon a showing of changed conditions." A reconciliation of the facially conflicting language of Civil Code sections 5127.5 and 5127.6 with the trial court's statutory power to modify or revoke any order for child support (Civ. Code, § 4700) is beyond the scope of this case.

*Assigned by the Chairperson of the Judicial Council.