**Vuocolo v. Vuocolo**

*Alfred V. Papa,* for plaintiff.
*Paul W. Johnson,* for defendant.

CAIAZZA, *J.,* January 7, 1987 — The matter which is presently before the court on argument and briefs is the progeny of a complaint in divorce filed on July 27, 1984. An absolute divorce was entered by order of court dated November 17, 1984. The issues of equitable distribution of the marital property, alimony, counsel fees, costs, and expenses were bifurcated from the divorce action and thereby reserved for subsequent resolution. On April 11, 1985, defendant filed a petition requesting possession of the family home. The matter was referred to a master for a hearing. At the hearing it was agreed by all sides that the master would hear, in addition to the question of possession of the marital home, the other issues preserved by the bifurcation. Testimony was taken on June 21, 1985, and the master prepared and filed a report on August 8, 1985. Plaintiff filed his exceptions to the master's report on August 12, 1985. Briefing was completed on the exceptions by July 31, 1986, and oral argument was held August 7, 1986, before this court.

The parties were married on April 22, 1969. It is evident from the testimony received at the master's hearing that marital bliss never visited this union and, although they were not divorced until Novem-

ber 27, 1984, the pair quickly established separate lives, albeit, for the most part, under the same roof. They were not sufficiently separate, however, as to preclude offspring; a son was born on August 4, 1971.

Plaintiff-husband, now 68 years old, is a retired employee of Associated Box and has a fixed monthly income consisting of $419 in Social Security benefits and a net pension income of $161, totalling $580. He testified to several health complaints for which he takes medicine; however, he is not currently under a doctor's care. Defendant-wife, 61 years of age, never completed high school. While a teenager she worked for three years as a nurses' aide, but has no other work experience outside the home; she has no skills saleable in the market place. Her income is limited to $464 from Social Security for herself and the parties' son. Plaintiff is under order of court, dated February 4, 1985, to pay child support in an amount equal to the monthly utilities bill of the marital residence. Although varying, the average utilities bill is between $200 and $220 per month. Defendant is and has been treated on an ongoing basis for a nervous condition.

The parties, by mutual agreement, divided the bulk of their personal property between themselves, leaving for the master only the marital residence, a life insurance policy and plaintiff's pension, as well as the issues of alimony, costs, and expenses. By way of summary, the master recommended that defendant be allowed to remain in the marital residence as a life tenant, rent free, that she be awarded permanent alimony of one dollar per year, that plaintiff retain the life insurance policy and his pension, and that he be responsible for all costs and expenses, including $50 of defendant's attorney fees.

Plaintiff's exceptions to the master's report, numbering 16 separate allegations of error, encompass four separate issues. Exceptions one through nine concern the disposition of the marital residence; 10 and 11 concern alimony; 12 and 13, personal property; 14 and 15, costs and fees; and 16 is a general assertion that the entire report is contrary to law. Plaintiff's brief in support of his exceptions represents an exercise in vituperation.

## I. MARITAL RESIDENCE

The first exception raised by plaintiff in regard to the marital residence is that it should not have been deemed marital property at all, and therefore should not have been subject to equitable distribution. In support of this he asserts that the real property deed is in his name only, and that he paid for the property with his own funds. However, in his brief, at page 4, plaintiff admits that "[d]efendant has an equitable interest in the marital residence. . . ." and suggests that the property should be sold and the proceeds divided between the parties. This solution would be lawful only if the home is classified as marital property. The master correctly held that it is marital property. The issue apparently is not contested; consequently, we shall move on.

Plaintiff next asserts that the master erred by recommending that sole possession of the marital residence be awarded to defendant, rent free, and that title to the property be transferred to both parties to be held jointly, with a right of survivorship, and not as tenants in common. The master limited his recommendation of sole possession to the occurrence of the first of the following events: (1) defendant's death; (2) her abandonment of the property; (3) her remarriage; or (4) her cohabitation in lieu of remarriage.

Plaintiff stresses in his brief the mandate of the Divorce Code that it is the court's duty to "[e]ffectuate economic justice between parties who are divorced . . . and [to] insure a fair and just determination and settlement of their property rights." 23 P.S. §102(a)(6) (relating to legislative intent). He points to plaintiff's age (68 years), his health, and his limited and fixed income as factors overlooked by the master. He frequently returns to the allegation that the house was bought and paid for solely by plaintiff. He also recites from the Divorce Code that an equitable division of marital property is to be effectuated "without regard to marital misconduct," 23 P.S. §401(d), apparently hoping to minimize the effect of a protection from abuse order entered against plaintiff in 1984. Later in the brief, however, he attempts to persuade the court that defendant's misconduct should be considered against her in the ultimate decision with respect to the house.

We find that, although the Divorce Code, 23 P.S. §101 et seq., grants the court sufficient equity powers to allow sole possession of the marital residence by one party under certain circumstances, Laczkowski v. Laczkowski, 344 Pa. Super. 154, 496 A.2d 56 (1985), the facts as found by the master do not support his recommended disposition of the marital residence under the circumstances of this case. The Divorce Code directs that "the court shall . . . equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors. . . ." 23 P.S. §401(d). Once the parties' residence has been deemed to be marital property, as is the case here, and one party is permitted to reside there to the exclusion of the other, the rights of the

nonresident party must be considered and properly vindicated.

In Gee v. Gee, 314 Pa. Super. 31, 460 A.2d 358 (1983), it was stated that a petition for equitable distribution requires "the court to equitably dispose of *all* the rights and interests of the parties in *all* of the marital property." Id. at 35 n. 2, 460 A.2d at 360 n.2 (Emphasis in original). The court went on to hold that, where real marital property is being used by one party alone, the nonresident party's rights and interests in the property can be properly vindicated by fair rental payments from the party in physical possession. Id. In King v. King, 332 Pa. Super. 526, 481 A.2d 913 (1984), the Superior Court restated its holding in Gee susbstantially as we have stated it here. See King at 536, 481 A.2d at 918. The court there, though, found no abuse of discretion by the trial court in failing to order rental payments where the nonresident party's rights and interests had been adequately protected through means other than rent. Id.

However, the time frame for sole possession in both of the cases discussed supra was the period between the separation of the parties and the eventual equitable distribution of the marital property. In the case sub judice the period of sole possession would extend beyond equitable distribution, where the master has recommended that title to the property be transferred to both parties, held jointly with the right of survivorship, and that defendant be awarded sole possession for her life, or until at least one of several contingencies occurs.

The master supports this recommendation by noting at pages three and four of his report that the marital residence is the only home the minor son of the parties has known since birth, that the residence is close to the church attended by both de-

fendant and her son, that the residence is close to a store and close to defendant's parents. Proximity, he asserts, is important because defendant does not have an automobile, nor can she afford to purchase one. Section 401(h) of the Divorce Code, 23 P.S. §401(h), provides that, "The court may award to one, each, or both, of the parties the right to live in the family home *for reasonable periods of time."* (Emphasis supplied). We must determine whether, under the circumstances of this case, the equivalent of a life tenancy is a "reasonable period of time."

No Pennsylvania cases interpreting this section of the Divorce Code have been brought to the court's attention, nor have we found any cases. As we appear to be dealing with an issue of first impression in the Commonwealth, and are called upon to interpret a statutory section, we look for guidance to the Statutory Construction Act of December 6, 1972, No. 290, §3, 1 Pa. C.S. §1501 et seq. We need search no further than section 1921(a), 1 Pa. C.S. §1921(a), which provides: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." The relevant legislative intent of the Divorce Code is expressed at §102, 23 P.S. §102, as follows:

"(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.

(2) Encourage and effect reconciliation and settlement of differences between spouses, especially where children are involved.

(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

. . . .

(6) Effectuate economic justice between parties who are divorced . . . and insure a fair and just determination and settlement of their property rights.

(b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent."

Reducing this expressed intent to one sentence, we conclude that the divorce law of Pennsylvania, within the context of the realities of the matrimonial experience, and absent reconciliation or settlement of differences, seeks to protect the children of the marriage from harm caused by its dissolution,[1] and to work economic justice in settling the affairs of the embattled spouses. We therefore know that in determining what constitutes a "reasonable period

---

1. Our conclusion with respect to the protection of the children of a marriage is consistent with, and is partially derived from, the reasoning of our Superior Court in Laczkowski v. Laczkowski, 344 Pa. Super. 154, 496 A.2d 56 (1985). There the court held "that the lower court had the authority to temporarily award the marital residence, pending equitable distribution of marital property, to a spouse having physical custody of a minor child." Id. at 162, 496 A.2d at 60. It bottomed its decision on the legislative intent quoted in the text, supra, and on two decisions from sister states also dealing with pendente lite situations. Quoting from one of these cases, the court determined that part of the legislative intent and purpose was " 'to avoid uprooting the children from the home, school, social and community setting upon which they are dependent.' " Id. at 165, 496 A.2d at 61 (Citation omitted).

of time" to allow defendant to occupy the marital residence to the exclusion of plaintiff, we must look to the needs of any minor children and to the economic status of the parties.

Our conclusion is supported by case law in other jurisdictions where the issue has arisen. The decision to allow one spouse exclusive possession of the marital residence has frequently turned on the needs of minor children, on the age and health of the parties, and on their financial needs and' resources. See generally A. Oldfather, J.E. Kosel, Valuation and Distribution of Marital Property, §12.03 (1984) and the cases cited therein.

In In re Marriage of Duke, 101 Cal.App. 3d 152, 161 Cal.Rptr. 444 (1980), the California Court of Appeals held that the trial court had erred in ordering the immediate sale of the marital residence rather than deferring the sale during the minority of the children. The court acknowledged "the unique relationship of that asset to the family," Id. at 158, 161 Cal.Rptr. at 447, and reasoned that its significance "cannot be measured solely by its value in the marketplace," and that "a move to a new environment [would be traumatic and disruptive] to children whose roots have become firmly entwined in the school and social milieu of their neighborhood." Id. at 155-56, 161 Cal.Rptr. at 446.

In the instant case the parties have a son 15 years old. While the record is silent as to any adjustments to the joint legal custody of the parents, it is not disputed that defendant has sole physical custody of the child. The marital residence is the only home the son has known and, although there is ample evidence to suggest the family life within this home has been anything but tranquil, his relationships within the "social milieu" of the neighborhood must be considered. Also, the house is within walking dis-

tance of the church where the son serves as an altar boy. In the course of his 15 years living in the same house it is reasonable to assume that he has made friends both at his school and generally in the community.

We therefore find that the reasoning developed supra, applied to the facts as just stated, justifies the master's recommendation that sole possession of the marital home be awarded to defendant for the duration of the son's minority. In Pennsylvania a minor is defined as "An individual under the age of 21 years." 1 Pa.C.S. §1991 (relating to definitions).[2] Our inquiry into the proper disposition of the marital home does not end here, however, as there remains the question of what to do with this asset after the son's 21st birthday. At that point the only considerations will relate to the parties themselves and will be much more in the nature of a pure equitable distribution of marital property.

In Taylor v. Taylor, 381 So.2d 1353 (Fla. 1980), the Florida Supreme Court affirmed the trial court's decision to award to the wife use, possession and occupancy of the marital home until remarriage or death, even though there were no minor children. The court looked to the fact that the parties had been married for 24 years, that the wife was 56 years old and in poor health, that she had only an eighth-grade education, extremely limited employment experience and no marketable skills, and, ty-

---

2. In the cases reviewed by the court in reaching this decision the age reference used most frequently was 18 years. We are disinclined to find an effect on those courts' rationale based on this distinction. For example, if the minor child in this case chooses to go to college after high school (the defendant has expressed a desire to see her son enter the seminary), he will have a familiar place to consider home, at least for the first few years away.

ing all these facts together, concluded that " '[t]he critical question is whether the award is equitable and just given the nature of the case.' " Id. at 1354 (Citation omitted).

With this reasoning in mind, we now look to the relevant factors delineated in section 401(d) of the Divorce Code, 23 P.S. §401(d) (relating to equitable distribution) and note that the parties were married from April 1969, to November 1984, a period in excess of 15 years. Plaintiff puts great weight on the assertion that he paid for the house with his own money. While defendant does not claim to have used any of her own money, it is undisputed that title passed to plaintiff alone after the nuptials[3] and that at least $3,000 of the $4,800 purchase price was borrowed from plaintiff's sister and repaid with marital funds during the course of the marriage.[4] The evidence is clear that defendant has lived in the marital residence from the date of its purchase until the present, and that during this time she has made significant contributions to its upkeep both as a homemaker and in the form of physical improvements made at her own expense. Therefore, in terms of investment in the home, the parties can assert an equal interest.

With respect to other factors listed in section 401(d), however, the parties do not stand in equal stead. Both parties are in their 60s, plaintiff being 68 years old and defendant 61 years old. Plaintiff is

3. The form of the title to property, if acquired after the marriage, is not dispositive of its status as marital property because this determination is to be made "regardless of whether title is held individually or by the parties in some form of co-ownership. . . ." 23 P.S. §401(f) (relating to the presumption of marital property).

4. The source of the remaining $1,800 was never explained by plaintiff.

retired from Associated Box and has a net monthly income of $580. He lists on his income and expense statement total monthly expenses of $766, yet shows no liabilities on his inventory and apprisement. No evidence was offered at the master's hearing to verify the claimed expenses. Plaintiff currently is under order of court to pay child support in an amount equal to the cost of utilities at the marital residence. According to defendant's brief, at page 4, plaintiff has requested a reduction of this order and a hearing is pending.

Defendant has no employment history (except for a three-year stint as a nurses' aide during her teen years) and has only a 10th-grade education. Her monthly income is limited to Social Security benefits of $232 each for herself and her son. She also receives support from plaintiff in the amount previously described in this opinion. Although plaintiff states that "monies are about equal in retirement income," plaintiff's brief at p. 1, such is clearly not the case when it is realized that defendant's income must meet the needs of two people. The discrepancy in income will be even greater when the income tied to the son's minority is lost.

It was established at the master's hearing that the location of the residence is of particular importance to defendant because of its proximity to her church, to stores and to her parents. Neither party is in good health, but only the wife is currently under a physician's direct care. For all of these reasons we agree with the master's recommendation that the marital residence be held by the parties as co-owners, and that defendant be awarded sole possession without an obligation to pay rent. The conditions of this sole possession will be as stated in the master's report at pages 4 and 5, and defendant's rights and duties shall be as detailed in the master's report at pages 5

and 6. This we conclude is equitable and just under the circumstances of this case.

We disagree, however, with the master's conclusion that the property should be held as joint tenants with the right of survivorship and not as tenants in common. Under this proposal, upon the death of either party, the survivor would get full title to the property. The equity of this seems obvious until it is considered that plaintiff is seven years defendant's senior and defendant's life expectancy, as a woman, is greater than that of plaintiff. The master's recommendation, then, effectively forecloses plaintiff, or his heirs or assigns, from receiving anything of his investment in this asset. It also seems unlikely that the plaintiff could gain capital by encumbering his interest in the property as it would take quite an adventuresome creditor to extend funds based on property held jointly with a right of survivorship, especially under these circumstances.

On the other hand, if the property is held in undivided one-half shares as tenants in common, the parties will then possess estates " 'in which there is a unity of possession but separate and distinct titles . . .' 14 P.L.E. Estates in Property §41 (1950)." Werner v. Quality Service Oil Company, Inc., 337 Pa. Super. 264, 270, 486 A.2d 1009, 1012 (1984).[5] By holding separate and distinct titles, plaintiff and/or his heirs or assigns can be assured of receiving their share of the value of the home when defendant's right to sole possession ceases. Also, plaintiff will be free to attempt to recoup his undivided one-half interest through immediate con-

5. As distinquished from joint tenancy with right of survivorship, which is characterized "by co-existence of the four unities of interest, title, time and possession." Allison v. Powell, 333 Pa. Super. 48, 51, 481 A.2d 1215, 1217 (1984).

veyance or by encumbrance. Id. ("[A] tenant in common may, without the consent of his co-tenant, sell, convey, or dispose of his undivided interest in the property.") Any such conveyance prior to the termination of the defendant's right to sole possession will, of course, be subject to that right of possession.

Our reasoning here is consistent with that of the Florida court in Robinson v. Robinson, 340 So.2d 935 (Fla.App. 1976), where the trial court was found to have abused its discretion when it attempted to forbid either party from encumbering or disposing of his or her interest in the marital home during the pendency of the order granting sole possession and occupancy to the wife until the youngest child reached the age of 18 years. The appellate court reasoned that appellant-husband's right to encumber or dispose of his undivided one-half interest does not jeopardize appellee-wife's right to possession and occupation because any purchaser of the husband's interest would take subject to this right. Id. at 937.

Should defendant's right to live in the marital residence terminate under any of the conditions set forth in the master's report, the equities discussed above will no longer prevail and the house shall be sold and the proceeds divided equally between the parties, or their heirs or assigns. For any period that defendant remains in the home after she has forfeited her right to sole possession, she shall pay to plaintiff monthly rent equal to the then current market rental value of the property.

The marital home was subjectively valued by plaintiff to be worth $15,000 while defendant felt it was worth $8,000. The master accepted plaintiff's valuation. We do not disturb this determination, but

note that the exact value is less relevant when the property is divided equally between the parties. The value of sole possession to defendant was not developed at the master's hearing, and we accept the master's conclusion that awarding the life insurance policy on the life of plaintiff to plaintiff adequately balances the scales in light of the other reasons militating in favor of allowing the defendant a "life tenancy" in the home.

## II. PERMANENT ALIMONY

Plaintiff's next two exceptions allege error in the awarding of permanent alimony. He argues that the master ignored plaintiff's limitations (fixed income, retirement and advanced age), and improperly tied the alimony award to a separate order of court concerning child support.

We disagree and accept the master's recommendation that defendant is entitled to permanent alimony. In discussing alimony under section 501 of the Divorce Code, 23 P.S. §501, our Superior Court concluded that alimony can be of unlimited duration if the circumstance of the party seeking alimony, as developed in a discussion of the factors listed in section 501(b), make it evident that she will not be able to meet her "reasonable needs," as developed in section 501(a). Pacella v. Pacella, 342 Pa.Super. 178, 189-190, 492 A.2d 707, 713-714 (1985).

The master considered and weighed the factors listed in section 501(b), giving special expression to those factors touching defendant's health, wealth, education and skills. He rightly concluded that defendant's chances of ever being able to support herself and to provide for her reasonable needs are virtually nonexistent and therefore reasoned that an

award of permanent alimony was proper.[6] The fact that defendant has some income of her own, the Social Security benefits of $232 per month does not make an award of permanent alimony inappropriate if that income alone is insufficient to meet her reasonable needs. See Madden v. Madden, 336 Pa.Super. 552, 486 A.2d 401 (1984) (if employment alone will not meet reasonable needs, alimony is proper).

Finally, plaintiff argues that the master improperly left the amount of alimony unspecified and speculative. We find no error. The master awarded permanent alimony based on the only income guaranteed to the defendant, viz., the $232 per month in Social Security benefits, but recognized that her current needs were aided in being met by the support paid to her son (an addition of $232 per month from Social Security and approximately $200 per month support from plaintiff). However, when this support ends, as it inevitably will upon the son reaching maturity, her needs for alimony will be greatly increased.

The master acknowledges this by setting the current award at a deminimus one dollar per year, thereby preserving the defendant's rights to proceed under section 501(e) to have the award re-evaluated when her circumstances change, while not overtaxing plaintiff's admittedly limited resources in the meantime. The master further demonstrated wisdom by refusing to attempt to guess today what the

---

6. The exact language of the statute provides that alimony shall be limited in duration "[u]nless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is subtantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment. . . ." 23 P.S. §501(c).

parties' needs and abilities to pay will be some years hence.

## III. PERSONAL PROPERTY

Plaintiff next asserts error by the master in purporting to assign a life insurance policy to plaintiff in exchange for the award of sole possession of the house to defendant, where it was never determined that the life insurance policy was in fact marital property. While this may have been error,[7] it is not necessary, and therefore improper, to so decide here because we conclude that the master could properly consider the life insurance policy in making his recommendation concerning equitable distribution even if it is not marital property.

Section 401(d)(3), 23 P.S. §401(d)(3), directs the court to consider as a factor relating to equitable distribution the respective estates of each of the parties. Equating estate with assets and net worth, it is clear that the insurance policy, if not marital property, is a part of plaintiff's assets and net worth. It therefore was properly considered in deciding equitable distribution and the master's error, if any, in purporting to "assign" it to plaintiff, was harmless.

On the question of the disposition of the retirement plan, plaintiff argues that the master erred when he recommended that it remain intact, but provides the court with no guidance as to why this recourse was incorrect.

No evidence was presented at the master's hearing as to what portion of the retirement plan was

---

7. We note that the presumption of marital property does not arise until it is shown that the property was acquired during the marriage. 23 P.S. §401(e) and (f). No such showing was ever made here.

earned during the marriage, nor was there any evidence pertaining to the present value of the plan. Additionally, no testimony was offered to aid the master and this court in determining whether the retirement plan was in the form of a pension, based on a principal fund in which plaintiff held an interest, and which could be subject to equitable distribution, or in the form of an annuity, in which plaintiff's interest is limited solely to the monthly payments themselves.[8] Finally, neither party claimed the retirement plan as marital property. Under these circumstances, we find no error in the master's recommendation that the plan be considered income to plaintiff, and not marital property subject to equitable distribution.[9]

## IV. COSTS AND ATTORNEY'S FEE

Lastly, plaintiff takes exception to the master's recommendation that plaintiff pay $50 of defendant's counsel fees, costs of the action and the master's fee, but fails to brief these issue for the court. We find no error in the master's recommendations and accept them. In the absence of extrinsic evidence as to defendant's legal fees, the master properly limited the amount of attorney fees to that time spent by defendant's counsel at the maser's hearing. Also, the facts in this case make it clear that equity is best served by assessing costs and the master's fee against plaintiff, who is in a better position to bear the burden.

---

8. This distinction was made by the trial court in Braderman v. Braderman, 339 Pa. Super. 185, 191, 488 A.2d 613, 616 (1985) (trial court reversed on facts not present in the instant case).

9. All remaining personal property was divided by agreement between the parties in approximately equal shares.

## V. CONCLUSION

We therefore accept the recommendations of the master's report except to the extent that the master would transfer title of the marital residence to both parties as joint tenants with a right of survivorship. On this issue we conclude that title shall be transferred to both parties to be held as tenants in common.

## ORDER OF COURT

Now, January 7, 1987, in the matters of equitable distribution of marital property, alimony, counsel fees and costs, for the reasons stated in the appended memorandum opinion, it is hereby ordered as follows:

1. Exclusive possession of the marital residence located at 311 Newell Avenue, New Castle, Lawrence County, Pa., is awarded to defendant without payment of rent to plaintiff until the occurrence of the first of the following events:

(a) Defendant's death;

(b) Abandonment of the premises by defendant, which shall be deemed to have occurred if she vacates the premises without intention to return for a consecutive period of thirty (30) days;

(c) Defendant's entry into cohabitation with a person of the opposite sex, with or without a marriage ceremony, who is not a member of her immediate family within the degrees of consanquinity."

Within 30 days of the date of this order, the parties shall execute a deed for the purpose of placing title in themselves as tenants in common, subject, however, to defendant's aforesaid right to exclusive possession. In the event the parties fail to execute the deed as aforesaid, upon application to this court, an appropriate order to effectuate the same shall be issued. Upon the termination of defendant's right to

sole possession, the marital residence shall be sold and the proceeds divided equally between the parties or their heirs or assigns.

Defendant's duties with respect to income and the upkeep and maintenance shall be that of a life tenant. Defendant shall be entitled to retain as her sole property all of the rental income earned from the property. Defendant shall pay all of the property taxes, make all ordinary and necessary repairs to preserve the property and she shall maintain fire insurance in an amount equal to 80 percent of the replacement value. Failure on the part of defendant to perform these duties shall be a basis for plaintiff to seek relief in this court to protect his interest in the property and accordingly this order may be modified as necessary to accomplish that end.

2. Defendant is awarded alimony for an unlimited duration in the amount of one dollar per year. This particular order is being made with the understanding that the order entered February 4, 1985, at no. 442 of 1970, Domestic Relations Office, Court of Common Pleas, Lawrence County, Pa., is in full force and effect. Upon a substantial change in circumstances, this order may be modified for the purpose of providing defendant with reasonable alimony.

3. The following personal property, together with any insurance theron, is awarded to plaintiff:

   (a) 1977 Cadillac
   (b) 25″ RCA color television
   (c) Two pictures
   (d) One cabinet
   (e) One table
   (f) Apartment stove on second floor
   (g) One 2-door cabinet
   (h) One cedar chest
   (i) One steamer trunk

(j) Garage tools, hand tools, mechanics tools and all ladders except one

(k) Miscellaneous lumber

4. Except for the above described property, all of the tangible personal property contained in the marital residence, together with any insurance thereon, is hereby awarded to defendant.

5. All right, title and interest in and to the life insurance policy in the face amount of $1,300 owned by plaintiff is left with him.

6. Plaintiff's retirement plan is not affected by this order.

7. Counsel for defendant is awarded $50 as his fee, to be paid by plaintiff.

8. Costs of suit and of the master's fee are assessed against plaintiff.

9. The prothonotary shall pay to the master the sum of $225 out of the $400 deposit made by plaintiff and remit the balance to counsel for plaintiff.