In re Grayson Lee HOBERG, Debtor.

Laura Hoberg, Frank Fox, Fox and Fox, Plaintiffs,

v.

Grayson Lee Hoberg, Defendant.

Bankruptcy No. SV 01–16502–AG. Adversary No. SV 01–01672–AG.

United States Bankruptcy Court, C.D. California.

Sept. 25, 2003.

Earle Hagen, Law Office of Hagen & Hagen, Encino, CA, for Debtor.

Byron Z. Moldo, Rein Evans & Sestanovich, Los Angeles, CA, trustee.

## MEMORANDUM DECISION

ARTHUR M. GREENWALD, Bankruptcy Judge.

### *Preliminary Statement*

On July 5, 2001, the Debtor, Grayson Lee Hoberg, filed a voluntary Chapter 7 petition. Thereafter, Plaintiff, Laura Hoberg, the Debtor's former wife, filed a

complaint for nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2), (a)(5) and (a)(15) on December 5, 2001.

The Plaintiff and the Debtor were married for approximately eleven years. The parties filed for dissolution of marriage in Los Angeles Superior Court Case NO. BD 319152 entitled "Grayson Hoberg, Petitioner vs. Laura Hoberg, Respondent" on or about April 2, 2000. The dissolution action was resolved by a Stipulated Judgment entered on July 25, 2000. (Trial Exhibit 1) The Debtor was represented by counsel. Plaintiff represented herself.

A non jury trial was held before this bankruptcy court regarding Plaintiff's complaint for nondischargeability, and upon the receipt of documentary evidence and testimony, as well as the statements and arguments of counsel, the matter was submitted.

### The Stipulated Judgment

Paragraphs 24A and 24B of the Stipulated Judgment recite as follows:

24. PAYMENT TO EQUALIZE DIVISION OF PROPERTY AND OBLIGATIONS

A. Petitioner shall pay to Respondent the sum of One Million Seven Hundred Thousand Dollars and Zero Cents ($1,700,000.00), hereinafter referred to as the "EQUALIZATION PAYMENT" as follows: May 1, 2000 the sum of $12,000.00; June 1, 2000, July 1, 2000, August 1, 2000, September 1, 2000 and October 1, 2000 the sum of $7,000.00 on the first days of each of those months. Commencing November 1, 2000 payments shall increase to $12,000.00 per month and continue on the first day of each and every consecutive month thereafter until April 1, 2001 wherein the balance of the "EQUALIZATION PAYMENT" shall be paid in full to Respondent from Petitioner. In the event the "EQUALIZATION PAYMENT" is not paid in full on April 1, 2001, interest at the rate of fifteen (15%) percent per annum shall be paid monthly to Respondent on the unpaid balance.

B. The parties acknowledge, and the Court thereon finds that a portion of the "EQUALIZATION PAYMENT" payment is an equalization of the division of community property, and a portion is to satisfy any claim that Respondent may otherwise have for spousal support. The parties agree, and the Court thereon orders that the portion of the "EQUALIZATION PAYMENT" paid in lieu of spousal support is non-taxable to Respondent and non-deductible by Petitioner. (See Trial Exhibit 1, pp. 20–21)

Paragraph 14, in pertinent part, states as follows:

14. *SPOUSAL SUPPORT*

A. The Court's jurisdiction to award spousal support payable by Petitioner to Respondent and/or payable by Respondent to Petitioner now, or at any time in the future, shall terminate as of the date the "EQUALIZATION PAYMENT," as set forth in Paragraph 24 A & B below, is paid in full.

B. The Spousal support provisions contained in Paragraph A & B shall be non-modifiable. No Court shall have jurisdiction to modify, extend or revoke any orders awarding spousal support pursuant to Paragraph 24 A & B of this Judgment . . . .

. . . D. The Court finds and orders that Respondent has waived all rights and claims to receive any money or property for her support from Petitioner (except as set forth to the contrary in Paragraph 24 A & B hereinbelow) and all rights and claims to extend duration of spousal support after payment in full of the EQUALIZATION PAYMENT. Therefore, the Court retains no jurisdiction to

award spousal support payable to Respondent from Petitioner after the payment in full of the EQUALIZATION PAYMENT. The Court further finds that Respondent has made this waiver knowing that she cannot return to any Court at any time and request spousal support having once waived her right to receive it. Knowing this, and after giving mature and intelligent thought to all the factors involved in such a waiver, including but not limited to the statistical facts set forth above, the Court finds that Respondent has made this waiver. The Court further finds that the parties have agreed that this waiver constitutes consideration for this Judgment and is given without fraud, duress, coercion or promises no contained herein.

(Trial Exhibit No. 1, pp. 12–13)

The Stipulated Judgment does not recite what portion of the Equalization Payment constitutes spousal support and what portion represents a division of community property.

### Debtor's Attempt To Set Aside The Stipulated Judgment

On May 25, 2001, the Debtor filed a motion in the state court to have the Stipulated Judgment set aside, specifically the provisions relating to spousal support and property division, claiming that there was a mistake in the valuation of the Earthlink stock. In addition, Debtor alleged an agreement with the Plaintiff, whereby there would be an increase in the valuation of the Earthlink stock from twenty-four to twenty-seven dollars a share, this increase to recognize a spousal support premium of $227,663.00. (Trial Exhibit 2, p. 74) The state court issued a tentative ruling denying Debtor's motion, staying further proceedings pending an order granting relief from automatic stay and taking the motion off calendar. (Trial Exhibit 4, p. 84) To date, Debtor has not proceeded further with his motion.

### Debtor's Filed Bankruptcy Schedules

In Bankruptcy Schedule E entitled, "Creditors Holding Unsecured Priority Claims," filed July 5, 2001, Debtor reported "Spousal Maintenance" of $227,663.00. (Trial Exhibit 11, p. 451)

On Bankruptcy Schedule F entitled, "Creditors Holding Unsecured Nonpriority Claims," filed July 5, 2001, Debtor reported a total of $1,563,495.00, including the sum of $1,368,820.00, described as "equalization of division of marital community." (Trial Exhibit 11, p. 453)

### State Court Proceedings Filed By Plaintiff

On February 24, 2002, the Plaintiff filed a motion requesting that the state court determine that the Equalization Payment included spousal support of $1,213,357.00, with the balance constituting a property division of $486,643.00. (Trial Exhibit 7, p. 96–228)

The state court conducted a hearing on the matter on April 24, 2002, and upon examining the evidence, both oral and written, and after hearing arguments, ruled in favor of the Plaintiff, determining that the sum of $1,213,357.00 constituted non-taxable spousal support, with the remaining sum of $486,643.00 representing a division of property. (Trial Exhibit 8, p. 266)

In this regard, on May 9, 2002, the state court issued an order which, in pertinent part, recited:

3. The equalization payment set forth in the Judgment entered on May 25, 2000, is determined to be comprised of the sum of $1,213,357.00, which is characterized as non-taxable spousal support, and the remaining sum of $486,643.00, which is characterized as property division.

4. All payments, which have been paid by Petitioner towards the equalization payment to date, which total the sum of $108,075.07, are deemed to have been paid towards the property division portion of the equalization payment. No portion of said amount shall be deemed to have been paid towards the spousal support portion of the equalization payment. (Trial Exhibit, p. 271–272)

### Debtor's Financial Circumstances

As of the first day of trial, i.e. February 24, 2003, the Debtor was employed by "iblast." He is 44 years old and in good health. On February 24, 2003, his monthly take home pay is $9,357.62. His monthly expenses are $7,848.54 and consist of the following:

| | |
|---|---|
| Child support | $2,662.54 |
| Rent | $1,945.00 |
| Utilities | $ 225.00 |
| Food | $ 350.00 |
| Clothing and Laundry | $ 400.00 |
| Medical | $ 30.00 |
| Transportation | $ 400.00 |
| Recreation, entertainment, etc. | $ 100.00 |
| Church | $ 100.00 |
| Insurance | $ 186.00 |
| Piano lessons | $ 250.00 |
| IRS Garnishment | $1,200.00 |
| TOTAL | $7,848.54 |

For the past six years, Debtor's salary has been:

| | Salary | Bonus | Severance | Total |
|---|---|---|---|---|
| 1997 | $106,798 | 0 | N/A | $ 106,798 |
| 1998 | $150,000 | 88,177 | N/A | $ 238,177 |
| 1999 | $183,654 | 75,360 | N/A | $ 259,014 |
| 2000 | $ 64,038 | 80,146 | 215,408 | $ 359,594 |
| 2001 | $ 83,333 | 25,000 | 51,897 | $ 160,230 |
| 2002 | $200,000 | 50,000 | N/A | $ 250,000 |
| TOTAL | $787,823 | $155,146 | $267,305 | $1,373,813 |

### Plaintiff's Financial Circumstances

As part of the Stipulated Judgment, Plaintiff received $794,378.07 in assets. The net value of these assets at the time of the divorce was as follows:

| Asset | Amount |
|---|---|
| Retirement Accounts | $211,403.00 |
| Mutual Fund | $ 10,700.00 |
| Bank Account | $ 47,840.00 |
| Current Residence | $248,950.00 |
| Furnishings | $ 40,000.00 |
| Cars | $ 55,000.00 |
| Rental Property | $ 72,410,00 |
| Equalization Payment | $108,075.07 |
| TOTAL | $794,378.07 |

Plaintiff receives $2,662.54 monthly in child support from Debtor, who is current in making those payments.

Plaintiff is the beneficiary of a $500,000.00 irrevocable trust set up for her by her parents with no limitations. The trust owns a life insurance policy payable upon the death of Plaintiff's parents.

Plaintiff is well qualified to earn a substantial living. Plaintiff has a Masters in Accounting and a Bachelor of Arts degree, being *magna cum laude* in Accounting. Plaintiff was a principal for American Management Systems with the responsibility of managing over 120 people. American Management Systems is one of the leading business consulting and systems integration firms with forty-nine offices world wide and over $1.2 billion in annual revenue. During the last couple of years of the marriage, Plaintiff was approached about returning to employment with companies such as Price Waterhouse Coopers and KPMG, being offered a salary ranging from $125,000.00 to $200,000.00 depending on whether Plaintiff's employment was to be part-time or full-time, and excluding bonuses.

### Nondischargeability of the Equalization Payment

#### Application of § 523(a)(5)

The court concludes that the Equalization Payment includes an amount in lieu of spousal support of $1,213,357.00, with the balance of $486,643.00 being a division of community property.

11 U.S.C. § 523(a)(5) is entitled "Exceptions to Discharge" and provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(5) to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of the court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extend that–

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(3) of the Social Security Act, or any such debt which has been assigned to the Federal government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability actually in the nature of alimony, maintenance, or support.

■ Whether a particular debt constitutes nondischargeable spousal support or a division of property is a question of federal bankruptcy law. *In re Chang*, 163 F.3d 1138, 1140 (9th Cir.1998).

■ Under bankruptcy law, the intent of the parties at the time the settlement agreement is executed determines whether a payment, pursuant to the agreement, is alimony, support or maintenance within the meaning of § 523(a)(5). *In re Brody*, 3 F.3d 35, 37 (2d Cir.1993); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993); *Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir.1986). Where the specific intent of the parties is not clearly stated in the agreement or order, courts have considered such factors as need, the absence of support payments in the dissolution decree, the presence of minor children in the marriage, and a disparity of income between the parties. *In re Gionis* 170 B.R. 675, 682 (9th Cir. BAP 1994).

■ However, in the instant case, the intent of the parties to include in the Equalization Payment an amount in lieu of spousal support is clearly indicated by the contents of Paragraphs 17A, 17B, 17D, 24A, and 24B of the Stipulated Judgment, as herein quoted.

The Stipulated Judgment, including these paragraphs, was drafted primarily by the Debtor and his attorney, the Plaintiff representing herself at the time. In view of the specific language agreed upon by the parties in the Stipulated Judgment, the fact that the Equalization Payment (1) was not subject to the events of death or remarriage, (2) was substantially payable in a lump sum, (3) was non-negotiable, and (4) was non-deductible, does not alter the parties' specific intent that a portion of the Equalization Payment was in the nature of spousal support with the balance a division of property.

In addition, the court gives substantial weight to the Plaintiff's testimony regarding her intent to accept a sum in lieu of spousal support, as well as her presentation set forth in Exhibit I, (Trial Exhibit 8, p. 215) establishing that the sum of $1,213,357.00 constitutes an amount in lieu of support, with the property division being $486,643.00.

The court gives little, if any, weight to the Debtor's testimony that the parties agreed that there was to be no spousal support, only child support and a division of property. Debtor's testimony regarding the contents of Exhibit H, (Trial Exhibit 8, p. 216) and his representations set

forth in his bankruptcy schedules E and F, likewise carry little, if any, weight.

Finally, the court gives significant weight to the state court's decision and order of May 9, 2002, (Trial Exhibit 9, p. 271–72) granting relief to the Plaintiff, characterizing the sum of $1,213,357.00 as non-taxable spousal support, with the remaining sum of $486,643.00 being characterized as property division.

### Application of § 523(a)(15)(A)

Section § 523(a)(15) provides an exception to discharge as follows:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order in a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

■ The statute presents a two prong test. First, the court must examine the Debtor's ability to pay the debt. If he does not have the ability to pay, the debt is discharged. If the ability pay does exist, the court must then consider whether the benefits of giving a discharge to the debtor outweighs the detriment that a discharge would have upon a spouse, former spouse or child of the Debtor.

■ In the instant case, the court has determined herein that the Equalization Payment included a division of property in the amount of $486,643.00, precluding the application of § 523(a)(5). In its May 9, 2002 order, the state court directed that the Debtor's payments of $108,075.07 were deemed to have been paid towards the property division, thus reducing the balance of the property division obligation to $378,567.93. Accordingly, this court must determine whether the indebtedness of $378,567.93, plus accrued interest[1], is dischargeable under § 523(a)(15).

The Debtor, at the start of trial on February 24, 2003, was employed by "iblast," being laid off on May 7, 2003. In his last position, while working at iblast, his take home pay was $9,357.62. His monthly expenses were $7,848.54. There has not been a challenge to the reasonableness of these expenses, either from the standpoint of present circumstances or the foreseeable future. As of the trial date, the Debtor's current monthly disposable income was $1,509.08 (i.e. $9,357.62 less $7,848.54), which on an annual basis would amount to the sum of $18,108.96 (i.e. $1,509.08 × 12 months).

■ However, to be considered is the Debtor's future disposable income calculated over a reasonable period of time, as well as his past payment history. See *In re Myrvang*, 232 F.3d 1116, 1120 (9th Cir. 2000). The record reflects that his aver-

---

**1.** Paragraph 24A of the Stipulated Judgment provided for the payment of interest on the unpaid balance of the Equalization Payment. Two issues have been raised concerning the payment of this interest: (1) whether the pre- scribed 15 percent is an appropriate rate and (2) whether interest should accrue from the Stipulated Judgment date on April 1, 2001. These issues are addressed herein following the instant analysis.

age annual salary over the past six years amounts to $228,969.00 (i.e. $1,373,813.00 divided by six years). Considering the Debtor's age, experience, health and past earning capacity, the court finds that the Debtor has the ability to earn an annual salary of $228,969.00 over the next several years. The Debtor has failed to present credible evidence of a future income stream over the next several years which would be otherwise. Annualizing his monthly expenses of $7,848.52 amounts to the sum of $94,182.24 ($7,848.52 × 12 months). Therefore, Debtor's annual disposable income over the next several years would amount to $134,786.96 (i.e. $228,969.00 less $94,182.24). No credible evidence has been presented by the Debtor establishing that his annual disposable income over the next several years would be otherwise.

The court determines that neither his current disposable income of $18,108.96, nor his anticipated annual future disposable income of $134,786.96 over the next several years, are sufficient to pay the principal amounts of spousal support and property division, together with accrued interest thereon, over the next several years.

As herein provided, the court has determined that interest on any unpaid balance of the Equalization Payment was to commence from April 1, 2001 at the annual rate of fifteen percent rather than the Stipulated Judgment date of May 25, 2000. With respect to the unpaid spousal support portion of the Equalization Payment of $1,213,357.00, accrued interest amounts to $346,547.85 as of the trial date of February 24, 2003, with a daily amount accruing thereafter in he amount of $488.63.

Regarding the unpaid balance of the property division obligation of $378,567.93, accrued interest from April 1, 2001 to the trial date amounts to $107,919.60, with a daily amount accruing thereafter in the amount of $155.28. As of the February 24, 2003 trial date, the total amount of the two obligations amounts to $2,046,392.40, including accrued interest to February 24, 2003, computed as follows:

| | |
|---|---|
| Unpaid spousal support | $1,213,357.00 |
| Accrued interest thereon | 346,547.85 |
| Unpaid property division | 378,567.93 |
| Accrued interest thereon | 107,919.60 |
| | $2,046,392.48 |

Commencing February 3, 2003, interest on both the unpaid spousal support and property division obligations are accruing at the daily amount of $642.31 (i.e. $488.03 plus $155.28).

■ Under California law, spousal and family support orders are enforceable in perpetuity until paid. *In re Marriage of Copeman* 90 Cal.App.4th 324, 328–329, 108 Cal.Rptr.2d 801 (2001).

Because of the Debtor's perpetual obligation to pay spousal support totaling $1,559,904.85 ($1,213,357.00 plus $346,547.85) as of February 24, 2003, plus daily interest thereafter of $488.63, the court finds that the Debtor does not have the ability to pay the property division obligation of $486,487.53 ($378,567.93 plus $107,919.60) as of February 24, 2003, plus the daily interest thereof of $155.28, considering his current disposable income of $18,108.96 and his anticipated future disposable income of $134,786.96 over the next several years. Therefore, the property division obligation is discharged under § 523(a)(15)(A).

### Application of § 523(a)(15)(B)

■ Having considered the application of § 523(a)(15)(A), the court addresses the application of § 523(a)(15)(B). To be determined, based upon a balance of the equities, is whether the Debtor's benefit from the discharge of the property division obligation outweighs any detriment to the

Plaintiff. *See In re Myrvang*, 232 F.3d 1116, 1121 (9th Cir.2000).

Balancing the equities, the court finds that the benefit to the Debtor outweighs any detriment to the Plaintiff. As part of the Stipulated Judgment, Plaintiff received $794,378.07 in assets. She currently receives $2,662.54 monthly child support from the Debtor, who appears currently to be making these payments.

Plaintiff is the beneficiary of a $500,000.00 irrevocable trust set up for her by her parents with no limitations. The trust owns a life insurance policy payable upon the death of Plaintiff's parents.

As stated herein, Plaintiff is well qualified to earn a substantial living. Plaintiff has a Masters in Accounting and a Bachelor of Arts degree, being *magna cum laude* in Accounting. Plaintiff was a Principal for American Management Systems with the responsibility of managing over 120 people. American Management Systems is one of the leading consulting and systems integration firm with forty nine offices world wide and over $1.2 billion in annual revenue. During the last two years of her marriage to the Debtor, Plaintiff has been approached concerning employment with leading accounting and management companies, being offered a salary ranging from $125,000 to $200,000 depending on whether Plaintiff's employment was to be part-time or full-time, excluding bonuses.

In contrast, the Debtor is faced with satisfying a perpetual, nondischargeable spousal support judgment of $1,559,904.85, plus accrued interest from February 24, 2003 at the daily amount of $488.63.

The Debtor's annual disposable income of $134,786.96 over the next several years, however, is insufficient to pay the perpetual support obligation, coupled with the property division obligation. Considering both the Plaintiff's and the Debtor's circumstances, and balancing the equities, the court finds that the discharge of the property division obligation would be a greater benefit the Debtor than any detriment to the Plaintiff caused by the discharge. Therefore, the property division obligation is discharged under § 523(a)(15)(B), as well.

### Award of Attorneys Fees

In the Stipulated Judgment dated May 25, 2000, the parties agreed to the following with respect to payment of attorneys fees:

44. *PAYMENT OF ATTORNEYS FEES AND COSTS*

A. In the event that either party hereto brings any action or proceeding to enforce any provision contained in this Judgment, or in any other made by a Court in connection with this Judgment, the party prevailing in such action or proceeding will be entitled to receive from the other such reasonable attorney's fees and other reasonably necessary costs regardless of the need and/or ability of the parties to pay the same. (See Trial Exhibit, p. 30)

During the divorce proceedings, the state court awarded the following attorneys fees to be paid by the Debtor representing his contributive share of attorneys fees incurred by the Plaintiff.

| Award Date | Amount | |
| --- | --- | --- |
| April 30,2001 | $ 12,000.00 | (Trial Exhibit 2, p. 41) |
| December 19, 2001 | $ 11,530.00 | (Trial Exhibit 5, p. 90) |
| January 30, 2002 | $ 53,000.00 | (Trial Exhibit 6, p. 94) |
| May 9, 2002 | $ 4,000.00 | (Trial Exhibit 9, p. 272) |
| TOTAL | $ 80,530.00 | |

### Award of $12,000.00

Prior to the Debtor filing his chapter 7 petition on May 5, 2000 and subsequent to the filing of the Stipulated Judgment on May 25, 2000, the Plaintiff brought an OSC pursuant to the Domestic Violence Protection Act re Restraining Orders, Modified

Child Visitation, Attorneys Fees and Other Orders and an OSC re Injunctive Relief; Determination and Collection of Arrears Attorneys Fees and Other Orders, resulting in the state court filing an order on July 19, 2001, restraining the Debtor's activities with respect to contacts with Plaintiff and their son, as well as modifying visitation rights and cooperating with the Child Custody Evaluation Panel. With respect to the award of attorneys fees, the order provided:

12. The sum of Twelve Thousand Dollars ($12,000.00) shall be paid by Petitioner to Frank O. Fox of the Law Firm of Fox And Fox from funds on deposit in Petitioner's Credit Suisse First Boston account, number RAHWR, forthwith.

13. Respondent's request for additional attorney's fees and costs is reserved to the time of the review hearing on November 6, 2001. (See Trial Exhibit 2, p. 41)

The contents of the state court order reflect that the Plaintiff was the prevailing party.

### Award of $11,530.00

Pursuant to a hearing held on December 19, 2001 before the state court, an order was filed shortly thereafter concerning the production of records, as well as visitation rights and injunctive relief. The order also provided the following as to attorneys fees:

8. Petitioner shall pay to Respondent the sum of $11,530.00 as and for the attorney's fees that Respondent incurred related to the domestic violence proceedings against Petitioner. The Court reserves the determination of when said amount shall be paid to the hearing, which is set tot take place on January 30, 2002.

9. Respondent's Motion for Attorney's Fees, Costs and Other Orders is continued to January 30, 2002, at 8:30 a.m. in the above-entitled Court. (See Trial Exhibit 5, p. 88)

The contents of the state court order reflect that the attorneys fees were related to prior domestic violence proceedings wherein the Plaintiff was the prevailing party.

### Award of $53,000.00

Pursuant to a hearing held before the state court on January 30, 2002, the court filed an order which stated the following regarding the award of $53,000.00:

1. In addition to any attorney's fees and/or costs, which have been previously ordered and pursuant to the criteria set forth in the cases of *In re Marriage of Cueva* and *In re Marriage of Keech,* the Court finds that the sum of $53,000 in attorney's fees was reasonably incurred by Respondent and based solely upon prevailing party provision set forth in the parties' stipulated Judgment Of Dissolution of Marriage, orders said sum of $53,000 payable by Petitioner, GRAYSON HOBERG, to Respondent, Laura Hoberg. Said amount is made up of the following components:

a. $8,000 relating to the issues of blocking Petitioner's accounts and securing funds for the payment of Respondent's obligations to Respondent;

b. $22,000 relating to Respondent obtaining a judicial determination of the amount of arrears owed by Petitioner to Respondent;

c. $11,000 relating to Respondent opposing Petitioner's unsuccessful attempt to set aside the Stipulated Judgment; and

d. $12,000 relating to filing and appearing on Respondent's motion

to obtain attorney's fees. (See Trial Exhibit 6, p. 94)

### Award of $4000.00

Pursuant to the hearing held on April 24, 2003, the state court filed an order on May 9, 2002, which included the following provision as to the award of attorneys fees:

5. Petitioner, Grayson Hoberg, shall pay to Respondent's attorney, Frank O. Fox of The Law Firm of Fox and Fox, the additional sum of Four Thousand Dollars ($4,000.00) as and for his contributive portion of Respondent's attorney's fees. The Court reserved the issue of how said payment will be paid until the next hearing. (See Trial Exhibit 9, pp. 272–3)

A review of the record of the April 24, 2002 hearing reflects that the Plaintiff was the prevailing party, as the state court's findings conform to the Plaintiff's contentions regarding the contents of the Equalization Payment.

### Attorneys Fees Treated as Prepetition Debts

 In the instant case, the court finds that the post petition award of attorneys fees by the state court totaling $80,530.00 are rooted in and are relevant to the prepetition Stipulated Judgment. Accordingly, they are treated as prepetition debts, subject to discharge, unless an exception applies. *In re Vickie Lynn Marshall*, 273 B.R. 822, 830 (Bankr.C.D.Cal.2002); *see In re Kadjevich*, 220 F.3d 1016 (9th Cir.2000).

### Application of § 523(a)(5) to Attorneys Fees

As stated in *Collier Family Law and the Bankruptcy Code* ¶ 6.05[1] (2003) (footnotes omitted):

It is extremely common for one spouse to agree or be ordered to pay the attorney's fees of the other in a divorce proceeding. Sometimes, attorney's fees are awarded in other family law proceedings, such as those involving child custody. Whether such awards are dischargeable under section 523(a)(5), as in cases of other types of marital obligations, depends primarily on the intent of the award or agreement in light of the parties' circumstances at the time it occurred.

 If the purpose of the fee award in marital dissolution proceedings is to provide support, then the fee award is nondischargeable under 11 U.S.C. § 523(a)(5). *In re Catlow*, 663 F.2d 960, 962 (9th Cir.1981). A number of factors may be relevant to the determination of what constitutes support. *In re Gionis* 170 B.R. 675, 682 (9th Cir. BAP 1994). Need is an important factor, as is the absence of support payments in the decree, the presence of minor children in the marriage, and a disparity of income between the parties. *Id.*

 If the evidence reflects that the award of attorney's fees was not based upon need or the financial circumstances of the parties, then attorney's fees relating to marital dissolution proceedings can be discharged. *In re Gibson* 103 B.R. 218, 221 (9th Cir. BAP 1989).

 In the instant case, the court finds that the parties intended that attorneys fees be awarded to the prevailing party regardless of need and/or the ability of the parties to pay attorneys fees. This intent is stated specifically in Paragraph 44A of the Stipulated Judgment, referred to herein. These factors are significant in terms of determining whether the attorneys fees in question constitute support, or in the nature of support. As the parties specifically excluded these factors in determining the fees to be awarded, the parties did not intend that the award of attorneys fees be

support or in the nature of support. The parties agreed that attorneys fees were awarded exclusively on the basis of who was the prevailing party. Therefore, the attorneys fees in question do not fall within the purview of the support exception to discharge under § 523(a)(5). As such, they are dischargeable unless they are excepted from discharge under § 523(a)(15).

### Application of § 523(a)(15) to Attorneys Fees

As the attorneys fees in question do not constitute support, or in the nature of support under § 523(a)(5), the court addresses whether the attorneys fees are nondischargeable under § 523(a)(15).

■■■ The court finds that the provisions of Paragraph 44A preclude a determination of dischargeability under § 523(a)(15)(A), as the parties agreed in the Stipulated Judgment that the ability to pay was not to be considered in the award of attorneys fees.

■■■ For the reasons stated with respect to the dischargeability of the property division obligation under § 523(a)(15)(B), the court finds that the attorneys fees in question are dischargeable under § 523(a)(15)(B), as the benefit to the Debtor from the discharge of these fees outweighs any detriment to the Plaintiff.

### Commencement Date Re Payment of Interest

■■■ Paragraph 24A of the Stipulated Judgment provides for the payment of the Equalization Payment. During the period May 1, 2000 through March 1, 2001, various installment payments, as more specifically identified in Paragraph 24A, were to be made on the first of each month to the Plaintiff with the unpaid balance to be paid in full on April 1, 2001. In the event the Equalization Payment were not paid in full on April 1, 2001, the Stipulated Judgment provided that interest at the rate of 15 percent per annum was to be paid monthly to the Plaintiff on the unpaid balance.

As of April 1, 2001, there was paid to the Plaintiff a total of $108,075.07, which, pursuant to the state court's order of May 9, 2002, was deemed to have been paid toward the property division of the Equalization Payment. No other payments have been made by the Debtor since April 1, 2001.

There appears to be no dispute that Plaintiff is entitled to interest on any unpaid balance of the Equalization Payment. Plaintiff, however, contends that interest should accrue from the date of the filing of the Stipulated Judgment, i.e. July 25, 2000. The Debtor asserts that interest should accrue from April 1, 2001.

The court finds that the appropriate date for interest to commence to run in the unpaid balance of the Equalization Payment is April 1, 2001. The Stipulated Judgment is void of any interest being due to the Plaintiff with respect to any of the installment payments to be paid on the first of each month from May 1, 2000 thru April 1, 2001, or on the payment of interest on the unpaid balance as of any date other than April 1, 2001. To compute interest from the filing date of the Stipulated Judgment would be inconsistent with the plain language set forth in Paragraph 24A directing that if the Equalization Payment were not paid in full on April 1, 2000, interest at the rate of fifteen percent per annum shall be paid monthly to Plaintiff on the unpaid balance.

### Rate of Interest

■■■ The Debtor contends that the interest rate of fifteen percent per annum, as prescribed in Paragraph 24A of the

Stipulated Judgment, is usurious and should not be allowed.

■ The court finds that the Debtor's contention lacks merit. The essential elements of usury are: (1) the transaction must be a loan or forbearance, (2) the interest to be paid must exceed the statutory maximum, (3) the loan and interest must be absolutely repayable by the borrower, and (4) the lender must have had a willful intent to enter into a usurious transaction. *Ghirardo v. Antonioli*, 8 Cal.4th 791, 798, 35 Cal.Rptr.2d 418, 883 P.2d 960 (1994).

The Equalization Payment described in the Stipulated Judgment does not constitute a loan or forbearance. Therefore, one of the essential elements of usury is lacking.

■ Article XV, Section 1 of the California Constitution provides that the rate of interest on a judgment rendered by a California court should not exceed 10 percent per annum. However, the disposition of marital property is not subject to this limitation, but is governed by the dictates of fairness and equity. *In re Marriage of Escamilla*, 127 Cal.App.3d 963, 967, 179 Cal.Rptr. 842 (1982); *In re Marriage of Stallcup*, 97 Cal.App.3d 294, 302, 158 Cal. Rptr. 679 (1979).

The cases of *Escamilla* and *Stallcup* applied California Civil Code Section 4800, which has since been repealed as of January 1, 1994. Family Law Section § 2550 has replaced § 4800 and determines the disposition of community property.

The court finds that the rate of interest of fifteen percent per annum on the unpaid balance of the Equalization Payment is fair and equitable, the court being influenced by the fact that both Plaintiff and the Debtor agreed to this rate in approving the Stipulated Judgment, the rate also being approved by the state court. The provi-

sions of § 2550 have not changed California law with respect to the rate of interest regarding any disposition of marital property being governed by fairness and equity.

### Indemnity for Taxes

■ Paragraph 31C of the Stipulated Judgment provided as follows:

> C. Each party will indemnify and hold harmless the other party on his/her portion of the tax obligations defined in this Judgment and will reimburse the other party for all damages and costs incurred as a result of a party's failure to abide by the terms of this section, including reasonable attorneys' fees, accountants' fees and other cots, whether incurred in defending an action by a taxing authority or in enforcing the provisions of this section. (See Trial Exhibit 1, pp. 23–25)

When one spouse has agreed to pay the taxes or hold the other spouse harmless from taxes pursuant to a divorce decree, that agreement as to liability is subject to a determination under 11 U.S.C. § 523(a)(5) and (a)(15). *Collier Family Law and the Bankruptcy Code* ¶ 6.08[2] (2003).

The intent of the parties at the time of the settlement agreement determines whether an obligation is alimony, support or maintenance within the meaning of § 523(a)(5). *Shaver v. Shaver*, 736 F.2d at 1316.

The court determines that the Debtor's obligation to hold the Plaintiff harmless from certain tax liabilities is not in the nature of support under § 523(a)(5). In making this determination, the court finds that the Plaintiff has failed to meet her burden of proving that the intent of the parties at the time the Stipulated Judgment was executed was that the indemnity and hold harmless provision regarding tax

obligations was in the nature of support. In this regard, it is of some consequence that the Stipulated Judgment is silent as to whether this provision is in the nature of support in view of the fact that there exist other provisions describing child and spousal support.

■ As to the application of § 523(a)(15)(A), the court finds that in view of the perpetual nondischargeable support obligation, the Debtor does not have the ability to comply with the indemnity and hold harmless tax provisions for the same reason that he does not have the ability to pay the property division obligation as herein stated. Therefore, he is discharged from this obligation under § 523(a)(15)(A). The court finds that, as is the case with respect to the property division and attorneys fees, the benefits of a discharge of this obligation outweighs any detriment to the Plaintiff.

*Dismissal of the 11 U.S.C. § 523(a)(2) Claim*

Plaintiff's second amended for relief alleged that when the Debtor entered into the Stipulated Judgment, he never intended to pay the Equalization Payment. Plaintiff prayed that the Equalization Payment be determined to be nondischargeable under § 523(a)(2) [2]. (Complaint, ¶ 12–14)

Though the allegation was denied by the Debtor in his answer, the Joint Pretrial Order submitted by the parties and entered by the court on February 19, 2003 fails to present any issue of fact and/or law regarding the application of § 523(a)(2). In addition, pretrial and post trial briefs fail to address any issue regarding § 523(a)(2). Accordingly, the court dismisses the Plaintiff's claim under § 523(a)(2) for failure to prosecute.

The contents of this Memorandum shall constitute the court's findings of fact and conclusions of law.

**JUDGMENT**

In accordance with the court's Memorandum Decision, which constitutes this court's findings of fact and conclusions of law, filed concurrently with this judgment, IT IS SO ORDERED AND ADJUDGED that:

1. In compliance with the Equalization Payment provisions of the Stipulated Judgment filed on May 25, 2000 in the Los Angeles Superior Court Case No. BD 319152 entitled "Grayson Hoberg, Petitioner vs. Laura Hoberg, Respondent," the sum of $1,213,357.00, plus interest thereon of $346,547.85 to February 24, 2003, plus accrued interest thereafter in the daily amount of $488.63, constitutes a nondischargeable obligation due and owing from the Debtor, Grayson Hoberg, to the Plaintiff, Laura Hoberg, pursuant to 11 U.S.C. § 523(a)(5).

2. The balance of the unpaid Equalization Payment in the amount of $378,567.93, plus interest thereon of $107,919.60 as of February 24, 2003, plus accrued interest thereafter in the daily amount of $155.28, constitutes a discharged debt pursuant to § 523(a)(15)(A), § 523(a)(15)(B) and § 727(a).

3. Attorneys fees awarded by the Los Angeles County Superior Court in the amount of $80,530.00 constitutes discharged debts pursuant to § 523(a)(15)(A), § 523(a)(15)(B) and § 727(a).

4. The Debtor, Grayson Hoberg's liability to indemnify and hold harmless the

---

**2.** The Complaint, however, fails to specify whether the claim arises under § 523(a)(2)(A) and/or § 523(a)(2)(B).

Plaintiff Laura Hoberg, as more particularly described in Paragraph 31(c) of the Stipulated Judgment, constitutes a discharged obligation pursuant to § 523(a)(15)(A), § 523(a)(15)(B) and § 727(a).