**In re Teresa MULLINS, Debtor.**

**Daryl Mullins, Plaintiff,**

v.

**Teresa Mullins, Defendant.**

**Bankruptcy No. BK–S–03–17995–VJ.**
**Adversary No. 03–1238–VJ.**

United States Bankruptcy Court,
D. Nevada.

June 22, 2004.

Effie D. Sahihi, for Plaintiff, Daryl Mullins.

Christopher P. Burke, Las Vegas, NV, for Teresa Mullins.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

JOHN L. PETERSON, Bankruptcy Judge.

The dispute between these parties arise from a dissolution of marriage judgment entered July 14, 1998 in the Superior Court of California, County of San Diego. The judgment entered by the California family court incorporated a marital settlement agreement (Agreement). The Agreement provided for $500.00 a month in spousal support for Plaintiff, Daryl Mullins; with said payments paid directly to Providian VISA, a credit card company. The spousal support was to continue until the debt owed to Providian VISA, $26,524.00, was paid in full. Debtor, Teresa Mullins, filed for Chapter 7 bankruptcy protection on June 26, 2003, listing both Plaintiff and Providian as unsecured creditors, and sought to discharge the debt. Plaintiff objects to the discharge, alleging the debt is nondischargeable under 11 U.S.C. § 523(a)(5) and 523(a)(15). Plaintiff was represented by Effie D. Sahihi, Esq. and Defendant was represented by Christopher P. Burke, Esq. Each party testified during the Trial and have filed Post–Trial Briefs. At Trial Plaintiff's exhibits A through T and Defendant's exhibits 1 through 6 were admitted. After consideration of the testimony, exhibits, applicable law, and arguments, the court enters its Findings of Fact, Conclusions of Law and Judgment.

### JURISDICTION

This action was filed to determine the dischargeability of a particular debt pursuant to 11 U.S.C. § 523(a)(5). Additionally,

allegations were made that the Debtor should be denied discharge under 11 U.S.C. § 523(a)(15). This court has exclusive jurisdiction over these core matters. 28 U.S.C. § 157 and 28 U.S.C. § 1334. Because this court has exclusive core jurisdiction over the matters before it, it proceeded to trial on the merits.

## ISSUES

1. Whether the debt associated with the Providian VISA account are in the nature of spousal support, so as to be non-dischargeable under 11 U.S.C. § 523(a)(5)?

2. If the payments are not in the nature of spousal support, whether the debt should, nonetheless, be non-dischargeable under 11 U.S.C. § 523(a)(15)?

## FINDINGS OF FACT

The Plaintiff and Debtor were married on August 5, 1989. During their marriage, the parties separated on a couple of occasions. Debtor sought dissolution of the marriage after separating in May of 1998. However, Plaintiff insisted on certain conditions before he would agree to a divorce, which involved resolution of the couple's debts.

Rather than obtain an attorney, Debtor sought the services of a paralegal. At the April 28, 2004 Trial, Debtor confirmed that she, with the assistance of the paralegal, drafted the language of the Agreement. The pertinent part of the Agreement reads:

6. SPOUSAL SUPPORT—HUSBAND:

Wife has assumed responsibility for the obligation to Providian VISA in the amount of $26,524.00 and the parties agree that the payment of this amount at the rate of $500.00 per month shall be characterize [sic] as and for spousal support and shall be payable by Wage assignment. This shall be payable forthwith each and every month until the entire amount is paid. After this debt has been satisfied that husband's right to spousal support shall terminate and he may never in the future petition any court for such support as a result of this marriage.

7. DIVISION OF ASSETS AND OBLIGATIONS:

Parties have divided their separate and community assets and obligations to their mutual satisfaction including but not limited to:

Husband shall assume and pursue full financial and legal responsibility (ownership) of the following:

1. 1991 BMW and the obligation thereon.

2. Wells Fargo Master Card with a $1,500.00 balance.

3. Chevy Chase Bank VISA Card with a balance of $14,810.64.

4. Residence located at 1804 Lebaun Drive, Lemon Grove, CA and the encumberence [sic] thereon.

Wife shall assume and pursue full financial and legal responsibility (ownership) for the following:

1. Providian Visa in the amount of $26,524.00.

2. Bank of America in the amount of $4,600.00.

3. Macy's Visa [in the amount of] $5,200.00.

4. MBNA in the amount of $13,000.00.

5. Travelers Bank for couch [in the amount of] $300.00.

The debt amount outstanding on the 1991 BMW was assumed by the Plaintiff, while Debtor took ownership of a 1992 vehicle free and clear of any liens or pay-

ment responsibilities.[1] Plaintiff also assumed the mortgage of the couple's residence. The residence was valued at $176,000.00 with $181,000.00 still owing to the mortgage lender. In 1998 Plaintiff's gross income was $66,524.00 while Debtor's gross income was $45,385.00.

During the April 28, 2004 Trial, Debtor stated that she was willing to pay spousal support to her husband to convince him to sign the Agreement. She also stated that her income at the time was sufficient to pay the support because she would no longer have to pay the mortgage payment or other similar living expenses because she had arranged to live with her parents, rent free.

Plaintiff claims that he required the support because the related Providian VISA debt of $26,524.00 had been incurred mostly by the Debtor during their separation and he would have been unable to pay this debt in addition to those he agreed to assume in the Agreement.

The Providian VISA credit card was obtained by Plaintiff for the purpose of consolidating credit cards which had been issued to Debtor. The Providian VISA account listed Debtor as an authorized user. Subsequent to the divorce, the Providian VISA credit card account was acquired by Chase Platinum MasterCard (Chase), account number 5184 4500 4360 6676, with Plaintiff still listed as the issue holder and Debtor as an authorized user.

After the Divorce, Debtor complied with the terms of the Agreement and made monthly payments on the credit card without incurring additional charges for approximately two (2) years. Plaintiff and Debtor had arranged for the monthly billing statements to be sent to her Las Vegas, Nevada address. As of May 1999 the balance of the credit card account was $17,254.00 and was the lowest amount owed during this time period.[2] However, Debtor then began to incur additional charges on the credit card in violation of the Agreement, which included a clause that neither party would incur any liability or obligation for which the other would be liable. Part 10 of the Agreement, titled Mutual Releases, reads in pertinent part:

 c. Wife warrants to Husband that she has not incurred, and she covenants that she shall not incur, any liability or obligation for which Husband is or may be liable, with the exceptions of any obligations identified in this agreement. . . [3]

At one point, Debtor took out a $9,500.00 cash advance for her own personal use. Once the Plaintiff learned of the Debtor's continued use of the credit card he tried unsuccessfully to have his name removed from the account.

Debtor filed for Chapter 7 bankruptcy protection on June 26, 2003. Debtor's Schedule F—Creditors Holding Unsecured Nonpriority Claims, list both Plaintiff and Chase as creditors. Plaintiff is identified with a $25,000.00 debt, while Chase is listed with a debt of $28,931.00.[4] Plaintiff

---

1. The make and model of the vehicle was never disclosed.

2. *Debtor testified that she believed the debt was as low as $14,000.00 but provided no documentation to support this amount. Plaintiff's exhibit E provides monthly balances which were reported by Providian VISA (and subsequently Chase) to Experian, a Credit Reporting Agency, Experian's independent credit reports show that May 1999 had* the lowest balance of any month between October 1998 and May 2003.

3. This is also referred to as a Hold Harmless clause.

4. As of October 27, 2003, the outstanding balance on the Chase account was $33,726.04.

filed this adversary proceeding on August 27, 2003, seeking, among other things, to have the debt incurred by Debtor under the Agreement found non-dischargeable.

## RULE OF LAW

### 11 U.S.C. § 523(a)(5) and (15)

Section 523 provides in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; . . .

First this court must determine if the debt payments are in fact spousal support obligations and thus nondischargeable under 11 U.S.C. § 523(a)(5). If they are then the court need not concern itself with 11 U.S.C. § 523(a)(15), which involves reviewing the ability of Debtor to pay the debt or balancing the benefit to the Debtor against the detriment to the former spouse. Such an inquiry is performed only when the payments are found to be payments other than spousal support.

### Determination of Spousal Support

"In order to determine whether a debt is a nondischargeable spousal support obligation or a dischargeable property settlement, the court must ascertain the intention of the parties at the time they entered in their stipulation agreement, and not the current circumstances of the parties." *Leppaluoto v. Combs (In re Combs)*, 101 B.R. 609, 615 (9th Cir. BAP 1989) (quoting from *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986) and *In re Spurgeon*, 80 B.R. 477, 478 (W.D.Mo.1986)). "In this district, the test applied has been the 'intent' test, which contemplates an examination of the operative divorce documents and any relevant extrinsic evidence to determine whether the parties intended the obligation to be in the nature of a property settlement or alimony, maintenance, or support." *Hobbs v. Hobbs (In re Hobbs)*, 30 B.R. 586, 588 (Bankr.D.Nev. 1983). The Combs court continued to discuss spousal support and how it should be determined; "In interpreting a decree, and even in deciding if it is ambiguous, the court should consider the surrounding circumstances and all other relevant incidents bearing on the parties' intent when they entered into the decree. Parol evidence is

admissible to clarify the parties' intent...
Bankruptcy courts have employed various factors to determine the intent of the parties of an ambiguous divorce decree. Some of these factors include:

1. The label given to the payments; [5]

2. The context or location of the disputed provision in the decree;

3. The parties' negotiations and understanding of the provision;

4. Whether a lump sum or periodic monthly payments were provided for;

5. The relative earning power of the parties;

6. Whether the recipient spouse would be entitled to alimony under state law;

7. Whether interest accrues on the entire debt or only on the monthly payments past due; and

8. Whether the debtor's obligation of payment terminates on the death or remarriage of the recipient, or on the death of the debtor." See *Combs* at 616.

 When analyzing a clause within a divorce decree, which purports to hold the other spouse harmless from future liability, the court will look again to the intent of the parties and whether an obligation is alimony, support or maintenance within the meaning of § 523(a)(5). *Hoberg v. Hoberg, (In re Hoberg)*, 300 B.R. 752, 766 (Bankr.C.D.Cal.2003). The hold harmless clause can be intended by the parties as alimony or support even when the divorce decree specifically states that the parties waive all rights to alimony or support payments. *Armento v. Armento, (In re Armento)*, 127 B.R. 486 (Bankr.S.D.Fla.1991). Such a clause is contemplated at the time

of divorce to avoid the inequity of placing another spouse liable for the financial obligation incurred solely by the other. "Absent the hold harmless agreement, the support payments made by the debtor to the creditor pursuant to the settlement agreement would be rendered ineffectual." *Id.* at 490

 Additionally, payments to third parties will not preclude such payments from being held to be spousal support or alimony under 11 U.S.C. § 523(a)(5). The legislative history of section 523(a)(5) supports an intent approach to such payments, similar to that discussed earlier. During a joint statement of Congressman Don Edwards and Senator Dennis DeConcini, the floor managers of the compromise bill which became the Bankruptcy Reform Act, they stated:

If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of the debtor's spouse, former spouse, or child. *124 Cong.Rec. H11096* (Daily Ed. Sept. 28, 1978).

Payments in the nature of spousal support or alimony need not be made directly to a spouse in order to be excepted from discharge under § 523(a)(5). *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983); *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir. 1983); *French v. Prante (In re French)*, 9

---

**5.** Defendant argues neither party exercised their rights under the Internal Revenue Code, re: Plaintiff did not list an alimony deduction and Defendant did not list alimony income in the years prior to this adversary proceeding. Defendant alleges such evidence provides support for finding the payments as some-

thing other than spousal support. However, the parties are able to amend their tax returns and the court is critical of Defendants returns where the amount of income from gambling is exactly equal to her amount of deductions. This makes her returns highly suspicious!

B.R. 464, 468 (Bankr.S.D.Cal.1981); *Porter v. Gwinn (In re Gwinn),* 20 B.R. 233, 234 (9th Cir. BAP 1982) (citing *In re Spong,* 661 F.2d 6 (2nd Cir.1981)); *County of El Dorado v. Crouch (In re Crouch),* 199 B.R. 690, 692 (9th Cir. BAP 1996) (interrupting an assignment to a government agency, where the former spouse would not be liable for the payment).

■ "The final determination of what portions of the Judgment constitute non-dischargeable alimony, support, or maintenance is a question of federal law." *Jodoin v. Samayoa (In re Jodoin),* 209 B.R. 132, 137–138 (9th Cir. BAP 1997). Thus, as stated in *Seixas v. Booth (In re Seixas),* 239 B.R. 398, 402 (9th Cir. BAP 1999), this court must ascertain the intention of the parties at the time they entered into the divorce agreement, that substance prevails over form, regardless of the label placed in the agreement by the parties.

### APPLICATION TO THESE FACTS

■ From a reading of the Agreement, it seems apparent that the parties intended to treat the Providian VISA debt as spousal support. The Agreement involved six (6) credit card accounts, only one of which was identified as spousal support. The parties intentionally chose to distinguish the Providian VISA account from the other credit cards by treating the payments as spousal support.

However, even if the unambiguous language of the Agreement is disregarded, and the court looks beyond the written words, Debtor's acts and comments still support a finding that the payments were for spousal support. Debtor stated during Trial, her intention was to pay spousal support to her husband so as to induce him into signing the Agreement. Additionally, Debtor stated that at the time of the Agreement, the Providian VISA payments were not burdensome because she would

no longer be obligated for the mortgage payments which were assumed by the Plaintiff, nor would she be required to make similar payments due to the arrangements made with her parents. In 1998 Plaintiff's income was approximately $5,500.00 per month before taxes. After deducting for taxes, mortgage payment, car payment, and over $16,000.00 in credit card debt assumed by the Plaintiff in the Agreement, it is reasonable to believe the Plaintiff's claim of his inability to pay the Providian VISA debt.

Debtor also contends that because the payments were made directly to a third party credit card company rather than to the Plaintiff, this factor dictates a holding that the Providian VISA provision is a property settlement agreement. A majority of the case law is to the contrary. Payments in the nature of spousal support need not be made directly to a spouse in order to be excepted from discharge under 11 U.S.C. § 523(a)(5).

Because the Providian VISA debt payments and the Mutual Release clause (also known as a hold harmless clause) are in the nature of spousal support, and exempt from discharge under 11 U.S.C. § 523(a)(5), this Court finds the debt non-dischargeable.

### RULING

The Plaintiff's Complaint, requesting exemption of the Providian VISA debt, now the Chase debt, from discharge is granted. A separate Judgment will be entered.

IT IS SO ORDERED

### *JUDGMENT*

Consistent with the FINDINGS OF FACT AND CONCLUSION OF LAW entered on this date,

IT IS ORDERED that the Plaintiff's Complaint and the Relief Requested therein is GRANTED;

IT IS FURTHER ORDERED that the debt owed to Plaintiff equals the outstanding balance of the Chase Platinum Master-Card (Chase), account number **** **** **** ****, as of the date of entry of this Order;

IT IS FURTHER ORDERED that said debt is exempt from discharge under 11 U.S.C. § 523(a)(5);

IT IS FURTHER ORDERED that said debt is subject to the federal interest rate;

IT IS FURTHER ORDERED that the Clerk is directed to enter this Judgment as soon as practicable, and that this Judgment constitutes the final Judgment of the court.